986 A.2d 759

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Anthony FLETCHER, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 6, 2009.

Decided Dec. 28, 2009.

494

496

498

500

502

504

506

Kathleen E. Martin, Robert Jeremy Levant, Philadelphia, Levant, Martin & Tauber, P.C., Ryan David Guilds, Amy Rohe, Judith Bernstein–Gaeta, Arnold & Porter, LLP, for Anthony Fletcher.

Hugh J. Burns, Philadelphia District Attorney's Office, Amy Zapp, PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

This is a collateral capital appeal from an order dismissing Appellant Anthony Fletcher's petition for relief under the Post

Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. We affirm.[1]

### Factual and Procedural History

Appellant's convictions arose out of the shooting death of Vaughn Christopher on March 2, 1992, at approximately 1:00 a.m., in the 2000 block of South 60th Street in Philadelphia.[2] Appellant shot Christopher because Christopher failed to pay for drugs Appellant had given him. The shooting was witnessed by several persons including Natalie Grant, Angelic Kirkman, and Ronald "Skeet" Williams. In summary, the witnesses testified that Appellant approached Christopher and asked him for the money Christopher owed him.[3] Without giving Christopher an opportunity to respond, Appellant reached into his coat, pulled out a silver .380 caliber semiautomatic handgun, and then fired one shot at Christopher's feet. Christopher immediately began walking away from Appellant. When Christopher was about seven feet from Appellant, Appellant fired two more shots at him. One of the bullets hit Christopher in his thigh and the other hit him in his right flank. The bullet that struck Christopher in his flank caused damage to his right kidney, liver, and chest wall. Christopher stumbled away and collapsed against a parked car. He asked Williams to help him but Williams declined.

Christopher managed to rise to his feet and walk several steps but then fell to the ground and lapsed into unconsciousness. Police arrived soon thereafter and transported Christopher to a nearby hospital where he died a day and a half later.

Following the shooting, Appellant returned to his home and changed his clothes. He then returned to the scene of the

---

1. This Court has exclusive jurisdiction over appeals from the grant or denial of PCRA relief in cases in which the death penalty has been imposed. 42 Pa.C.S. § 722; 42 Pa.C.S § 9546(d).

2. More complete recitations of the facts underlying Appellant's convictions are set forth in *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261 (1999) (*Fletcher I* ) and *Commonwealth v. Fletcher*, 586 Pa. 527, 896 A.2d 508 (2006) (*Fletcher II* ).

3. Angelic Kirkman did not testify at Appellant's trial because the police could not locate her at that time. During Appellant's penalty hearing, however, she testified that she witnessed Appellant shoot Christopher.

shooting and remarked to Grant and Williams that, "You all better tell that boy he better not tell who shot him." Almost a week later Appellant approached Grant and warned her not to speak to the police. Afraid for her own safety and that of her family, Grant promised Appellant that she would not speak to the police about the shooting.

Police arrested Appellant on March 10, 1992, and charged him with, *inter alia,* murder, generally, and possessing an instrument of crime (PIC). Appellant then agreed to speak to police. After receiving *Miranda*[4] warnings, Appellant told the police that he approached Christopher and punched him in the head because Christopher and another man had robbed him during a dice game. Appellant further remarked that Christopher pulled out a gun, which prompted him to grab for Christopher's weapon. Appellant stated that he was able to gain control of Christopher's weapon and fired it twice at Christopher's legs.

On January 29, 1993, a jury convicted Appellant of first-degree murder (18 Pa.C.S. § 2502(a)) and PIC (18 Pa.C.S. § 907). Following the recording of the verdict and a penalty hearing, the jury found that the aggravating circumstances outweighed the mitigating circumstances and fixed the penalty at death.[5] *See* 42 Pa.C.S. § 9711(c)(iv) (the verdict must be a sentence of death if the jury unanimously finds one or more aggravating circumstances outweigh any mitigating circumstances).

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. The jury determined that the Commonwealth presented sufficient evidence to establish two aggravating circumstances: that Appellant knowingly created a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. § 9711(d)(7), and that at the time of the killing, the victim was or had been involved, associated or in competition with Appellant in the illegal sale, manufacture, distribution, or delivery of any controlled substance, and the killing resulted from or was related to the association or competition to promote Appellant's illegal activities, 42 Pa.C.S. § 9711(d)(14). The mitigating circumstances found by one or more jurors were: Appellant was under the influence of extreme mental or emotional disturbance at the time of the killing, 42 Pa.C.S. § 9711(e)(2), and the "catchall" provision set forth at 42 Pa.C.S. § 9711(e)(8).

Following the penalty hearing, trial counsel filed post-verdict motions pursuant to former Rule of Criminal Procedure 1123.[6] Appellant thereafter requested new counsel and Willis W. Berry, Jr., Esquire, was appointed to represent Appellant.[7] Appellant, who had filed numerous *pro se* motions seeking relief from his convictions, petitioned to have Mr. Berry removed as counsel and to proceed pro se. The trial court conducted an extensive colloquy and granted Appellant the right to represent himself. N.T. 4/4/95, 20–31; *Commonwealth v. Fletcher*, 586 Pa. 527, 896 A.2d 508, 512–13 (2006) (*Fletcher II*) (setting forth excerpts from the colloquy). Mr. Berry was then appointed to be standby counsel.

Mr. Berry and Appellant filed several supplemental post-verdict motions and the trial court held hearings at which Appellant represented himself and standby counsel acted in a supplemental capacity. The trial court eventually denied Appellant's motions. On February 21, 1996, Appellant, represented by new counsel, John Cotter, Esquire, was formally sentenced to death. Appellant, still represented by Mr. Cotter, filed a direct appeal in this Court. On March 24, 2000, this Court affirmed the judgment of sentence. *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261 (2000) (*Fletcher I*).[8] Appellant requested reargument but that request was denied on May 15, 2000. Appellant then filed a petition for a writ of certiorari in the United States Supreme Court which was also denied. *Fletcher v. Pennsylvania*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000) (*per curiam*).

Appellant filed a timely *pro se* PCRA Petition. Almost one year later Appellant filed a 245–page Amended Petition raising twenty primary issues, each of which was comprised of

---

**6.** Former Rule 1123 required defendants found guilty prior to January 1, 1994 to file post-verdict motions to preserve issues for appellate review. Rule 1123 was rescinded in 1993 and replaced by Rule 1410, which made the filing of post-trial motions optional. Rule 1410 was renumbered and is currently Pa.R.Crim.P. 720.

**7.** Willis W. Berry, Jr. is currently a judge on the Philadelphia County Common Pleas Court.

**8.** On direct appeal, Appellant raised in excess of twenty issues, including several claims alleging that prior counsel had been ineffective.

several sub-issues. The matter was assigned to the Honorable John Milton Younge for disposition. Judge Younge dismissed most of Appellant's claims but granted Appellant an evidentiary hearing on the following five claims:

1. Trial counsel was ineffective when he failed to present compelling exculpatory testimony from Dr. Hydow Park, the pathologist who performed the decedent's autopsy and also failed to expose a critical error by the testifying pathologist, Dr. [Ian] Hood;

2. The police in this case lost or withheld critical physical evidence regarding the decedent's clothing, and trial counsel was ineffective for failing to investigate and raise this issue of deficient police work at trial;

3. Trial counsel was ineffective for failing to investigate, develop, and present significant mitigating evidence, including mental health evidence;

4. Trial counsel was ineffective for failing to object where the jury found that the aggravating circumstance of "grave risk of death" to a person other than the victim existed based upon improperly admitted evidence, unconstitutionally broad jury instructions and improper argument by the prosecution; and

5. Trial counsel was ineffective for failing to object to the trial court's instruction regarding the possibility of parole.

PCRA Court's Opinion, 6/9/04 at 2.

Following an evidentiary hearing, Judge Younge granted Appellant a new trial on Appellant's first claim above but denied relief on the remaining issues. Judge Younge also denied relief on the remainder of the claims set forth in Appellant's Amended Petition.[9] The Commonwealth appealed to this Court and on April 21, 2006, this Court reversed Judge Younge's order granting a new trial.[10] This Court held that

9. A discussion of Appellant's argument on which he was granted relief and the rationale relied upon by Judge Younge to grant Appellant a new trial is set forth in *Fletcher II,* 896 A.2d at 513–16.

10. Appellant filed a prophylactic cross-appeal from the denial of relief on his other claims. Appellant's claims were not addressed by this Court because several of the claims remained unresolved by Judge

Appellant had waived review of the claim on which the PCRA court granted relief because it had not been raised in any of the post-verdict motions filed prior to sentencing. *Fletcher II*, 896 A.2d at 521.[11] This Court also ruled that even if the claim had not been waived, no relief was due because Appellant failed to establish prejudice.[12] *Fletcher II*, 896 A.2d at 522–23. This Court remanded the matter so that the PCRA court could address any unresolved matters. *Fletcher II*, 896 A.2d at 523.

■ On remand, Judge Younge held, based on the decision in *Fletcher II* and his review of the record, that nineteen of Appellant's claims had either been waived or previously litigated. PCRA Court's Opinion, 1/29/08, 5–6.[13] Judge Younge also determined that he had no legal authority to rule on Appellant's claim that this Court failed, on direct appeal, to conduct an appropriate proportionality review of the death sentence

Younge and Judge Younge failed to include a discussion of them in his Pa.R.A.P.1925(a) opinion. Consequently, the matter was remanded so that Judge Younge could dispose of the unresolved issues and prepare an opinion discussing his reasons for denying Appellant relief. *Fletcher II*, 896 A.2d at 523.

11. Because the issue had not been raised in a post-verdict motion, this Court recognized, under the rules then in effect regarding the preservation of issues for appellate review, that the only viable claim available to Appellant was a "layered" claim of ineffectiveness accusing appellate counsel of providing ineffective assistance of counsel for failing to raise on appeal an issue accusing post-verdict counsel of providing ineffective assistance for not presenting a claim that trial counsel had been ineffective for the reasons stated. The issue was deemed not cognizable because Appellant represented himself during the post-verdict motions stage of the proceedings and thus could not raise claims necessarily predicated on his own ineffectiveness. *See Fletcher II*, 896 A.2d at 522 and discussion *infra*.

12. Dr. Park conducted the autopsy on the victim. However, he was not available to testify at trial and the Commonwealth presented the testimony of Dr. Hood in Dr. Park's place.

13. The PCRA court erred to the extent that it concluded that Appellant's claims that were preserved by post-verdict motions were waived, as will be explained herein. Furthermore, as we explained in *Commonwealth v. Ronald Collins*, 585 Pa. 45, 888 A.2d 564 (2005) the previous litigation bar does not apply to claims of appellate counsel ineffectiveness even when the underlying claim relates to a "previously litigated" claim of trial counsel ineffectiveness.

imposed on Appellant. PCRA Court's Opinion, 1/29/08, 6. The instant appeal followed.

### Discussion

The PCRA provides relief to individuals who prove they were convicted of crimes they did not commit and those receiving illegal sentences. 42 Pa.C.S. § 9542. "A petitioner is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42 Pa.C.S. § 9543(a)(2)." *Commonwealth v. Natividad,* 595 Pa. 188, 938 A.2d 310, 320 (2007). One of these circumstances is ineffective assistance of counsel. 42 Pa.C.S § 9543(a)(2)(ii) (the PCRA provides relief to those individuals whose convictions or sentences "resulted from . . . ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"). To obtain relief under this provision, a defendant must plead and prove that: (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner. *Commonwealth v. Rodney Collins,* 598 Pa. 397, 957 A.2d 237 (2008); *Commonwealth v. Charles Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).[14] "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.' " *Commonwealth v. Rasheed Williams,* 587 Pa. 304, 899 A.2d 1060, 1064 (2006) (quoting *Commonwealth v. Howard,* 553 Pa. 266, 719 A.2d 233, 237 (1998)). "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a

14. In *Charles Pierce,* 527 A.2d at 977, this Court applied the standard for reviewing claims alleging ineffective assistance of counsel devised by the U.S. Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Although the ineffectiveness test applied by our Court has three prongs, as opposed to the two set forth by the U.S. Supreme Court, the tests are coterminous. *Commonwealth v. Washington,* 592 Pa. 698, 927 A.2d 586, 594 n. 8 (2007); *Commonwealth v. Gribble,* 580 Pa. 647, 863 A.2d 455, 460 (2004).

reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Michael Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is presumed to have been effective and the burden of rebutting that presumption rests with the petitioner. *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 728 n. 10 (2000).

 A defendant is not entitled to PCRA relief on claims that have been previously litigated or waived.[15] 42 Pa.C.S. § 9544. Here, Appellant's direct appeal was filed before this Court issued its opinion in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), which held that review of claims alleging ineffective assistance of counsel should generally be deferred until the post-conviction stage of proceedings. Appellant was represented by new counsel on direct appeal and was thus required to raise claims of trial counsel ineffectiveness under the pre-*Grant* framework. Therefore, on this collateral attack, Appellant is limited to claims of ineffective assistance of appellate counsel; claims respecting trial counsel are relevant only insofar as they prove a claim of appellate counsel ineffectiveness. Respecting such "layered" claims, Appellant must prove *Strickland/Pierce* ineffectiveness as to both trial and appeal counsel, in order to prove the cognizable claim of appellate counsel ineffectiveness.[16]

15. A claim is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or "it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa. C.S. § 9544(a)(2)(3). A claim is waived if "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b).

16. Prior to *Grant, supra*, defendants were required to raise all claims alleging ineffective assistance at the first stage at which they were represented by new counsel. *Commonwealth v. Daniels*, 600 Pa. 1, 963 A.2d 409, 420 n. 11 (2009); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977). In this matter, Appellant was required to raise all claims alleging ineffectiveness of trial counsel during the post-verdict motions stage of the proceedings in order to preserve them for subsequent review.

The concept of "layering" ineffectiveness claims and the requirements that must be met to obtain relief on a "layered" claim of ineffectiveness were recently discussed by this Court in *Commonwealth v. Daniels,* 600 Pa. 1, 963 A.2d 409 (2009):

> In *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014 (2003), this Court clarified the procedure to be followed in forwarding a PCRA claim challenging the effectiveness of all prior counsel, including prior direct appeal counsel, i.e., a "layered" claim of ineffectiveness. PCRA layering is necessary when the petitioner was represented by new counsel on direct appeal because claims bottomed upon trial counsel ineffectiveness—in particular, record-based claims—could have been raised on direct appeal. In such circumstances, any claim that a petitioner would forward sounding in trial counsel ineffectiveness would be waived under 42 Pa.C.S. § 9544(b). *McGill* explicitly stated that "in order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief if meritorious, he must **plead, present, and prove**" the ineffectiveness of direct appeal counsel, which necessarily related back to the actions of prior counsel. *McGill,* 832 A.2d at 1022 (emphasis in original). To "prove" that a layered claim of appellate counsel's ineffectiveness has arguable merit, the petitioner must develop and prove all three prongs of the Pierce test as to the ineffectiveness of trial counsel. *Id.*

*Daniels,* 963 A.2d at 419–20 (footnote omitted) (emphasis in original). In other words, in order to be eligible for relief on his claims of ineffectiveness, Appellant must establish that: 1) trial counsel was ineffective using the three-part test set forth above; and 2) all subsequent counsel were ineffective under the identical test for failing to argue that all prior counsel had been ineffective for not raising the claim at issue. *Rodney Collins,* 957 A.2d at 244; *McGill,* 832 A.2d at 1023.

Because Appellant was granted the right to proceed *pro se* during the post-verdict phase of the proceedings, he cannot successfully "layer" any claims alleging trial counsel's ineffectiveness that he did not raise in a post-verdict motion because

review of such "layered" claims necessarily requires an assessment of whether Appellant himself was ineffective for not including the claims in a post-verdict motion. The law prohibits a defendant who chooses to represent himself from alleging his own ineffectiveness. *Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Fletcher II*, 896 A.2d at 518; *Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726, 736–37 (2004). The fact that standby counsel was appointed to assist Appellant does not alter this conclusion. *Fletcher II*, 896 A.2d at 518. Thus, Appellant cannot succeed on any claim raised herein alleging either trial error or predicated on the ineffective assistance of trial counsel that Appellant, acting pro se, did not preserve in a post-verdict motion. Appellant's inability to raise his own ineffectiveness precludes him from presenting a properly layered ineffectiveness claim, except insofar as he preserved a claim of trial counsel ineffectiveness on post-verdict motions, only to have appellate counsel default it on appeal.

■■■■■ Our standard of review in an appeal from the denial of PCRA relief is "whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Gwynn*, 596 Pa. 398, 943 A.2d 940, 944 (2008) (citing *Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719, 723 (2003)). "The level of deference accorded to the postconviction court may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined." *Commonwealth v. Kenneth Williams*, 597 Pa. 109, 950 A.2d 294, 299 (2008). We review the following issues.

I. WHETHER THIS COURT SHOULD ABROGATE THE RULE PROHIBITING A DEFENDANT WHO DECIDES TO ACT AS HIS OWN ATTORNEY FROM ALLEGING HIS OWN INEFFECTIVENESS AND THAT OF STANDBY COUNSEL

■■■■■ Appellant first argues that the PCRA court erred in relying on *Fletcher II* to hold that several of his claims had been waived or previously litigated because Appellant repre-

sented himself during the post-verdict stage of the proceedings and failed to preserve many of the issues he now presents for review by not including them in a post-verdict motion. This issue is relevant to the resolution of some of Appellant's claims because, in order to prove that appellate counsel was ineffective for failing to raise a defaulted trial level claim, Appellant must establish that either he himself was ineffective or that standby counsel was ineffective for not properly preserving several of the issues he now raises on appeal. The law is clear that a defendant cannot allege his own ineffectiveness or that of standby counsel. *See Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525; *Bryant, supra.* Thus, any claim not raised in a post-verdict motion cannot serve as the basis for relief because relief is dependent on Appellant's establishing his own ineffectiveness for not raising the claim, which the law precludes him from doing.

Appellant claims that the PCRA court erred in finding waiver because it "mechanically applied this Court's holding that Mr. Fletcher had waived all ineffectiveness claims by briefly representing himself during a post-verdict hearing—a holding that erred on the law and misconstrued the facts." Appellant's Brief, 8. In the absence of new or additional evidence, or any legal support, Appellant essentially requests that we revisit this Court's holding in *Fletcher II.* We decline this invitation and conclude that Appellant is not entitled to relief on any claim that was not raised in a post-verdict motion and thus cannot be properly "layered" as required.

In the alternative, Appellant offers a host of additional reasons why the rule should not apply to his case. Appellant asserts that he did not actually represent himself during post-verdict motions and when he attempted to do so the trial court rebuffed him. Appellant contends that the record supports his position by showing that standby counsel acted during the post-verdict stage as if he were Appellant's counsel and that the trial court violated his constitutionally guaranteed right to represent himself by limiting him in his attempt to present various claims and arguments *pro se.* Appellant's Brief, 8–

12.[17] Appellant also argues that he could not have relinquished any ineffectiveness claims because at the time he waived his right to counsel, the "relaxed waiver" doctrine applied and this Court excused the failure to adequately preserve claims for appellate review in capital cases.[18] Appellant's Brief, 11 n. 3. Appellant further claims that under "relaxed waiver" it would have been reasonable for him to believe that his own ineffectiveness would be excused on appeal. Appellant's Brief, 11 n. 3.

Appellant further argues that he was incompetent to waive his right to counsel and that even if he was competent, the waiver colloquy was defective. Appellant bases his claim of incompetence on "known mental difficulties and incomprehension of the law," and on the failure of the trial court to advise him of the elements of the crimes with which he was charged and their possible sentences. Appellant's Brief, 12.

Appellant's claim that the waiver colloquy was inadequate is premised on an assertion that the trial court failed to: 1) ascertain during the colloquy whether Appellant was sufficiently competent to understand the rights he was waiving by representing himself; 2) advise him of the elements of the crimes and possible sentences with which he was charged; and 3) discover why he decided to represent himself. Appellant's Brief, 13–15.

Next, Appellant contends that the rule prohibiting a defendant who voluntarily has decided to forego his right to counsel

17. Appellant relies on the fact that standby counsel presented and argued some of Appellant's issues and the trial court directed Appellant to "shut up" at one point. Appellant's Brief, 9–11.

18. The "relaxed waiver" doctrine permitted, at this Court's discretion, review of issues in capital appeals that had not been properly preserved. *See Commonwealth v. Duffey*, 585 Pa. 493, 889 A.2d 56, 64 (2005) ("[T]his [C]ourt's relaxed waiver doctrine was discretionary, and thus, there was no guarantee that we would have analyzed [issues not previously presented] under the relaxed waiver doctrine ... Accordingly, any reliance on this [C]ourt's relaxed waiver doctrine is unavailing"). The doctrine was abrogated in *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), with respect to appeals involving the denial of PCRA relief and in *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 403 (2003), in direct appeals.

from later alleging his own ineffectiveness is violative of due process because: (1) it effectively punishes the defendant for exercising a right guaranteed him by the Sixth Amendment; (2) it is likely to lead to an unjust result; and (3) when combined with Pennsylvania's layering doctrine, it cuts off potentially meritorious claims of counsel's ineffectiveness. Appellant's Brief, 15. Appellant explains that it is simply unfair and unjust to prohibit a defendant from raising ineffectiveness claims because of a decision to forego counsel, a constitutionally guaranteed right, where there exist numerous claims of ineffectiveness having presumptive merit.

Finally, Appellant contends that the rule proscribing a defendant from alleging that standby counsel was ineffective deprives a defendant of due process at least with respect to those duties assigned to standby counsel. Appellant's Brief, 17. Appellant also claims that the application of the rule is especially harsh when, as here, standby counsel acts as Appellant's attorney and not as standby counsel.

The Commonwealth argues that we should summarily reject the many arguments Appellant presents in support of his request that we revisit the decision that Appellant waived claims he failed to raise while acting *pro se*. The Commonwealth first argues that, under the law in effect when Appellant was convicted, any claim not raised in a post-verdict motion was waived. *See Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 383 n. 4 (1998) (indicating that defendants convicted prior to January 1, 1994 waived for purposes of appellate review any issue not included in a post-verdict motion).[19] In addition, the Commonwealth argues that a defendant who has opted to represent himself and has waived claims of ineffectiveness by failing to timely raise them cannot

19. As stated *supra* at footnote 6, after January 1, 1994, the Pennsylvania Rules of Criminal Procedure no longer required that post-*trial* motions be filed in order to preserve issues for appeal. *See* Former Rule of Criminal Procedure 1410. Defendants thereafter could file optional post-*sentence* motions and were not required to include issues in a post-verdict motion in order to preserve them for appellate review, except for claims challenging the weight of the evidence or the discretionary aspects of the sentence. *See* Pa.R.Crim.P. 720.

surmount that waiver by presenting "layered" claims of ineffectiveness. *See Commonwealth v. Tilley,* 566 Pa. 312, 780 A.2d 649, 653 n. 9 (2001); *Bryant,* 855 A.2d at 736–37, 740. Commonwealth's Brief, 12.

The Commonwealth also asserts that the "law of the case" doctrine precludes Appellant's requested relief.[20] According to the Commonwealth, since the issue of whether Appellant waived all claims of trial counsel's ineffectiveness not presented in a post-verdict motion was decided against Appellant by this Court in a previous appeal, we may not now alter or amend that ruling. Commonwealth's Brief, 12–13.

The Commonwealth further argues that even if the "law of the case" doctrine does not apply, Appellant is not entitled to relief in any event. The Commonwealth submits that the record of the waiver colloquy and the transcripts of the hearings on Appellant's post-verdict motions belie Appellant's assertion that he did not represent himself during those proceedings. *Fletcher II,* 896 A.2d at 521. The Commonwealth asks us to categorically reject Appellant's argument that his waiver was invalid because of his purported belief that the "relaxed waiver" doctrine excused his own ineffectiveness. The Commonwealth states that the record shows Appellant acknowledged he understood his failure to present a claim would result in waiver. Commonwealth's Brief, 15. Finally, the Commonwealth contends that Appellant's assertion that

**20.** The "law of the case" doctrine:
> refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. *See* 21 C.J.S. Courts § 149a; 5 Am.Jur.2d Appeal and Error § 744. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326, 1331 (1995). *See also Commonwealth v. Wallace,* 582 Pa. 234, 870 A.2d 838, 847 (2005).

522

the trial court interfered with his right to represent himself entitles Appellant to no relief because Appellant failed to raise this issue either on direct appeal or in his PCRA petition. Commonwealth's Brief, 15.

With respect to Appellant's claim that he was incompetent and could not proffer a valid waiver of his right to counsel, the Commonwealth points out that Appellant has failed to present any evidence to support this assertion. In addition, the Commonwealth argues that the record demonstrates Appellant was not suffering from any mental defect rendering him incapable of proffering a valid waiver of counsel. It further argues that Appellant waived the claim because he refused to undergo a second mental health evaluation.[21] Commonwealth's Brief, 18–19. The Commonwealth further contends that the waiver colloquy was sufficiently complete because it was obvious to the trial court that Appellant was competent, and the court had no legal obligation to explain to Appellant the elements of the crimes or their sentences at the post-verdict stage of the proceedings or to inquire of Appellant why he wished to proceed *pro se*.[22]

The Commonwealth requests that we reject Appellant's two due process claims because Appellant did not provide legal authority or provide the standards applicable to their review. Commonwealth's Brief, 22, 23–24. In addition, the Commonwealth contends that Appellant's assertion that a *pro se* defendant should be permitted to raise his own ineffectiveness is "contrary to controlling authority." Commonwealth's Brief, 22 (citing *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (holding that a defendant who represents himself cannot thereafter complain that he was the victim of ineffective counsel)). The claim that a defendant should be permitted to challenge the effectiveness of standby counsel is meritless, according to the Commonwealth, because this Court relied on controlling au-

21. An earlier competency examination had found Appellant competent for post-verdict proceedings. N.T. 9/8/03, 172–173 (Commw. Exh. 12).

22. The Commonwealth notes that Appellant advised the trial court that he wanted to represent himself because he and Mr. Berry were not getting along and he believed Mr. Berry was not raising every issue he wanted raised. N.T. 4/4/95, 20, 22.

thority in *Fletcher II* to hold that Appellant was not entitled to relief and because Appellant provided non-controlling legal support for this claim. Commonwealth's Brief, 24.

Finally, the Commonwealth has provided the following summary of reasons why we should reject this claim:

> As both this Court and the PCRA court correctly concluded, any claim defendant did not present in post-verdict motions is waived and cannot be reviewed under the guise of "layered ineffectiveness." Defendant—who bears the burden of pleading in his petition and proving that his claims are not waived, 42 Pa.C.S. § 9543(a)(3), and of identifying where each issue he presents has been preserved, Pa.R.A.P. 2117(c), 2119(e)—has nonetheless failed to identify any of his instant claims as having been preserved in those motions. Accordingly, each of his claims should be deemed waived.

Commonwealth's Brief, 24–25.

■■■ Upon careful review of the briefs and arguments submitted by the parties, we hold that Appellant's argument that we should not adhere to our prior holding in *Fletcher II* is baseless. In *Fletcher II* this Court explicitly determined that Appellant acted as his own attorney during the post-verdict motions stage of the proceedings and that standby counsel's limited participation and the trial court's actions did not infringe or limit Appellant's ability to represent himself and present his claims. 896 A.2d at 522–23. Since this precise claim was raised previously, the "law of the case" doctrine clearly applies. We decline the invitation to revisit the issue of whether Appellant did, in fact, represent himself at post-verdict motions. *See Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995).[23] While there are exceptions to the "law

23. There are no Sixth Amendment impediments to a defendant's right to self-representation resulting from standby counsel acting as counsel or even taking an active role in the proceedings. *McKaskle v. Wiggins*, 465 U.S. 168, 179–80, 184, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Faretta*, 422 U.S. at 834 n. 36, 95 S.Ct. 2525. Moreover, the fact that the trial court may have constricted Appellant in the presentation of his post-verdict motions and told him to "shut up" is of no relevance because the record shows that the trial court did so to preserve the

of the case" doctrine, Appellant has satisfied none; he has not presented any new facts, alleged any change in the law, or established that the decision reached in *Fletcher II* was erroneous such that these exceptions would apply. *Starr*, 664 A.2d at 1332.

Next, Appellant's assertions that he was incompetent to effectuate a valid waiver of counsel and that the waiver colloquy was deficient are not reviewable because Appellant has not preserved them by presenting them in a PCRA petition. *See* Pa.R.A.P. 302(a); *Commonwealth v. Edmiston*, 578 Pa. 284, 851 A.2d 883, 889 (2004) ("Claims not raised in the PCRA court are waived and cannot be raised for the first time on appeal to this Court.").[24]

Appellant's due process claims involving the inability to raise his own ineffectiveness or that of standby counsel do not entitle him to relief because the law is clear that a defendant who chooses to represent himself has no recourse if he or standby counsel has been ineffective. In *Fletcher II*, this Court held "[Appellant's] pro se actions precluded future claims of ineffective assistance of trial counsel." *Fletcher II*, 896 A.2d at 522. *See also Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525; *Bryant*, 855 A.2d at 736–37, 741; *Commonwealth v. Appel*, 547 Pa. 171, 689 A.2d 891, 904 (1997). Our holding in *Fletcher II* was based on the United States Supreme Court's prior conclusion in *Faretta* where the Court explained that permitting pro se representation was a constitutional necessity because forcing experienced and competent legal representation on an unwilling defendant could be realized only "imperfectly." "The right to defend is personal" since it is the

decorum of the courtroom. This was entirely proper. *Faretta*, 422 U.S. at 834 n. 46, 95 S.Ct. 2525.

24. In *Commonwealth v. Brown*, 582 Pa. 461, 872 A.2d 1139, 1154–55 (2005), this Court held that questions of competency to stand trial cannot be waived in collateral proceedings for the failure to present them on direct appeal. The competency issue raised in this case, however, is Appellant's competency to waive his right to counsel for purposes of post-trial motions and *Brown* does not speak to this issue. Moreover, Appellant does not invoke *Brown* or suggest that its reach should be extended to the instant circumstances.

defendant that must bear the personal consequences of his representation. "And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' " *Faretta,* 422 U.S. at 834, 95 S.Ct. 2525. Thus, the Court explained, purely as a practical matter, in exercising one's right to self-representation, he or she relinquishes many of the benefits associated with the right to counsel, including the future right to allege ineffectiveness of counsel.[25] Also, were it otherwise, a *pro se* defendant could guarantee himself a new trial by intentionally being ineffective. *Bryant,* 855 A.2d at 736–37 (finding compelling trial court's observation that allowing a *pro se* defendant to raise his own ineffectiveness would make a mockery of the judicial system).

Appellant's request that we should apply the "relaxed waiver" doctrine and overlook his ineffectiveness during the post-verdict motions stage of the proceedings is equally unavailing. He argues the doctrine was in effect when he was tried and when he litigated his post-verdict motions, and he thus had a reasonable basis to assume that his own ineffectiveness would not be an impediment to review of any issue he failed to raise or preserve through his own ineffectiveness. We have categorically rejected this argument on numerous occasions and again do so here. *See Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786, 796 (2008).

We hold that Appellant cannot obtain relief on any issue he failed to raise in a post-verdict motion while acting *pro se.* We now undertake a review of Appellant's remaining claims keeping in mind that Appellant is not entitled to relief on any claim that has not been properly preserved or has been previously litigated. *See* 42 Pa.C.S. § 9544(a).

---

**25.** "The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. Thus, whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.' " *Faretta,* 422 U.S. at 834, n. 46, 95 S.Ct. 2525.

## II. WHETHER APPELLATE COUNSEL [26] WERE IN-EFFECTIVE IN NOT RAISING TRIAL COUN-SEL'S FAILURE TO INVESTIGATE AND PRES-ENT MATERIAL EVIDENCE DURING THE GUILT PHASE OF THE TRIAL; INCLUDING EV-IDENCE UNDERMINING MOTIVE EVIDENCE AND EVIDENCE THAT THE VICTIM WAS KNOWN TO CARRY A GUN

Appellant argues that appellate counsel were ineffective because they did not raise trial counsel's ineffectiveness in failing to introduce certain evidence and investigate adequately several of the Commonwealth's witnesses. Specifically, Appellant claims that trial counsel failed to present evidence that would have "eviscerated" the Commonwealth's theory of the motive for the killing, *i.e.* the victim mishandled a package of drugs for Appellant. Specifically, Appellant claims that trial counsel should have procured and introduced evidence demonstrating that the victim did not sell drugs and was known to carry a gun. Appellant further asserts that trial counsel was ineffective for not introducing character evidence of Appellant's reputation for non-violence, and evidence demonstrating that the police failed to collect all relevant evidence and conducted an inadequate and shoddy investigation. Relatedly, Appellant contends that appellate counsel were ineffective for not raising and preserving these claims regarding the ineffectiveness of trial counsel. Appellant's Brief, 17–27.

Appellant is not entitled to relief on his claims that trial counsel was ineffective for failing to discover and present evidence that the victim did not sell drugs, and was known to carry a gun, because they were not raised in a post-verdict motion.[27] Because Appellant is precluded from raising his

26. By the term "appellate counsel" Appellant sometimes refers to both standby counsel, Mr. Berry, and direct appeal counsel, Mr. Cotter. He apparently does not include himself within the meaning of this term. Consequently, we discuss, where appropriately raised, the ineffectiveness of both standby counsel and direct appeal counsel wherever Appellant challenges the effectiveness of "appellate" counsel.

27. The record shows that trial counsel did elicit testimony that the victim did not sell drugs but merely used them. N.T. 1/22/93, 30.

own ineffectiveness and that of standby counsel, he cannot satisfy the requirement that he prove that *all* prior counsel were ineffective, as he must do in order to obtain relief on these claims. *See Faretta, supra; Bryant, supra.*[28]

Appellant next claims that trial counsel was ineffective for not presenting evidence of good character and a reputation for being peaceful and non-violent. *See* Appellant's Memorandum of Law in Support of Petition for Post–Conviction Relief, 9/8/06, at 57–60. Such testimony, Appellant contends, would have bolstered his assertion that he did not instigate the encounter with the victim and that the shooting occurred while Appellant was attempting to defend himself. Appellant's Brief, 23.

Although Appellant raised this claim in a post-verdict motion, the claim was not raised in Appellant's PCRA petition. The first time the issue appears is in a Memorandum of Law in Support of Petition for Post–Conviction Relief filed on September 8, 2006, after this Court issued its decision in *Fletcher II* and remanded the matter to the PCRA court for the preparation of an opinion addressing Appellant's claims and making, where necessary, credibility determinations. *See Fletcher II,* 896 A.2d at 522–23 (ordering remand for the preparation of an opinion). Since this claim was not set forth in Appellant's PCRA petition and the order remanding the case did not extend permission to Appellant to file additional claims, this claim has been waived. *See Commonwealth v. Rainey,* 593 Pa. 67, 928 A.2d 215, 226 n. 9 (2007) (holding that

**28.** In neither his primary brief nor his reply brief does Appellant refute the Commonwealth's assertions that he failed to raise many of the issues he now presents on appeal in a post-verdict motion. We note that some of the issues raised on appeal were raised in a post-verdict motion. Those issues that were preserved in a post-verdict motion will be reviewed in accordance with the prevailing standards applicable thereto. We note that Rules 2117(c) and 2119(e) of the Pennsylvania Rules of Appellate Procedure mandate that litigants specify the manner in which issues were preserved and the location in the record where the issue appears and was preserved. *See also Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 847 (2003) (holding that this Court has no duty to peruse lengthy records to find support for issues raised by a defendant).

PCRA claim raised for the first time following a remand the PCRA court for preparation of an opinion was waived).[29]

Appellant lastly contends that previous counsel were ineffective for failing to raise and preserve issues pertaining to the investigation of the scene of the shooting conducted by the police and the failure of the police to secure the victim's clothing after he was taken to a hospital. With respect to the victim's clothing, Appellant argues that trial counsel was ineffective because the police had a duty to collect the victim's clothes as they may have had gun powder residue on them, the presence of which would have corroborated Appellant's claim that the victim was shot at close range during a struggle. He also asserts that trial counsel should have sought to have the trial court sanction the Commonwealth for not obtaining the victim's clothing and, at a minimum, request that the trial court give the jury an instruction on missing evidence or one advising it that it could infer that the missing clothing had gun powder residue on it. Appellant also faults counsel for not arguing that the police were negligent for waiting twenty-four hours after the shooting to secure and examine the scene of the shooting, and that the Commonwealth engaged in prosecutorial misconduct and suborned perjury by eliciting testimony implying that the scene of the shooting was examined by police within hours after the shooting. Appellant's Brief, 24–27.

The Commonwealth argues that since the police had no duty to secure the victim's clothing, trial counsel was not ineffective for not raising as an issue the failure of the police to obtain

29. The trial court declared that this issue was meritless because trial counsel had a reasonable basis for not introducing good character evidence, to wit, Appellant had been convicted of robbery, evidence the Commonwealth could have introduced to rebut Appellant's character evidence. In addition, the trial court concluded that Appellant was not prejudiced by trial counsel's failure to introduce character evidence in view of the strength of the evidence of Appellant's guilt. Trial Court's Opinion, 5/13/1997, at 75–79. Thus, had the issue been preserved, no relief would have been due Appellant. *See Commonwealth v. Lester Fletcher*, 580 Pa. 403, 861 A.2d 898, 915–16 (2004) (holding that witness presenting character evidence may be cross-examined about knowledge of a defendant's prior convictions that refute good character testimony).

the clothing. In addition, the Commonwealth points out that following the shooting, the victim was taken to a nearby hospital and into an operating room, where his clothing was removed from his body. Hospital records, according to the Commonwealth, do not indicate what happened to the victim's clothing thereafter. The Commonwealth also notes that the victim lingered for some time following the operation and that after he died, the police attempted to secure the victim's clothing but were unable to do so. Commonwealth's Brief, 32–33. The Commonwealth further contends that since the claim of negligence could not be proved and counsel was aware that the police did not secure the clothing and used that fact to cast doubt on the Commonwealth's case by arguing that the Commonwealth could not disprove that the shooting occurred at close range, counsel was not ineffective for failing to raise a claim of negligence with respect to the missing clothing. Finally, the Commonwealth claims that since Appellant failed to provide case law to support his assertion that trial counsel was ineffective for not requesting sanctions or jury instructions, no relief is due on that aspect of his claim. Commonwealth's Brief, 32–33, 35.

Regarding Appellant's assertion that the police conducted a shoddy investigation by failing to examine the scene of the shooting for twenty-four hours, the Commonwealth responds that police originally believed that the shooting occurred where the victim was first discovered by police. It was only later that police learned that the victim had been shot somewhere else and that upon being so informed, police immediately secured the area where the shooting occurred and examined it for evidence. Commonwealth's Brief, 33–34. The Commonwealth also notes that Appellant has failed to identify anything police would have found at the scene had it been immediately secured and examined.

 Appellant failed to preserve at the post-verdict motion stage his claims that trial counsel was ineffective for failing to assert that 1) police were negligent in not securing

the victim's clothing; 2) police conducted a "shoddy" investigation of the scene; and 3) sanctions or jury instructions with respect to these issues were warranted. Appellant cannot succeed on his current, "layered" ineffectiveness claims of appellate counsel ineffectiveness because the underlying claims respecting trial counsel, which are necessary to prove appellate counsel ineffective, were defaulted. *See Fletcher II.*[30]

Appellant did preserve a claim on post-verdict motions regarding the manner in which police conducted their investigations. Specifically, Appellant alleged that trial counsel was ineffective for not adequately investigating the "background and circumstances surrounding the investigation." The gist of the claim was that the police intentionally falsified their testimony with respect to their investigation of the scene of the shooting and that the Commonwealth presented perjured testimony regarding the police investigation of the scene, not that police acted negligently. *See* Additional Supplemental Post–Verdict Motion, filed 10/1/95, 12. To the extent that Appellant is repeating his preserved underlying claim as the basis for his current and cognizable derivative claim of appellate counsel ineffectiveness, we will address it on its merits. *See* Additional Supplemental Post–Verdict Motion, filed 10/1/95, 12–15.

**30.** No relief would have been due Appellant even had these claims been preserved as Appellant cannot meet any of the prongs comprising the ineffectiveness standard. With respect to the failure to obtain the victim's clothing, police have no obligation to affirmatively seek out evidence. *Commonwealth v. Bridge,* 495 Pa. 568, 435 A.2d 151, 157 (1981). Moreover, counsel acted reasonably by foregoing a claim alleging that the police had been negligent, which had little, if any chance of succeeding, in favor of arguing that the loss of the clothing inured to Appellant's benefit. Finally, Appellant has failed to establish that had the police secured the clothing, the outcome herein would have been different. Appellant's assertion that trial counsel was derelict in failing to argue that the police were negligent in their investigation of the shooting lacks merit because the record shows that the police conducted a full investigation once they learned all of the facts related to the incident, including that the victim had not been shot in the location where he was found. In addition, Appellant cannot establish that he was prejudiced by the alleged negligence of the police as he has failed to identify any piece of exculpatory evidence the police failed to gather due to their alleged negligence.

According to Appellant, evidence that the police lied and the Commonwealth suborned perjury with respect to the police investigation of the scene is found in certain questions posed to Detective Morton, and his responses thereto, which concerned when the detective was assigned to the case and when he examined the scene of the shooting. N.T. 1/19/93, 108–123. In posing these questions, the prosecutor prefaced them with the date of March 2, 1992, the date of the shooting, instead of the correct date of March 3, 1992, the date the detective actually examined the scene.[31] It is Appellant's view that this misstatement was intentional and was intended to mislead the jury with respect to where and how the shooting occurred. Appellant argues that trial counsel was ineffective for failing to conduct an investigation or raise an issue with respect to the noted discrepancy.

The trial court concluded that this claim was without merit. Trial Court's Opinion, 5/13/97, 80–81. The record demonstrates that the discrepancy was clearly unintentional and, more importantly, that Appellant was not prejudiced thereby since the jury was well aware of when the shooting occurred, the Commonwealth did not attempt to mislead the jury with respect to this point, and Appellant has failed to establish that had the right date been used, the outcome of the proceedings would have been different. Since trial counsel was not ineffective, direct appeal counsel was not ineffective for not raising this claim on direct appeal. *Commonwealth v. Christopher Williams*, 594 Pa. 366, 936 A.2d 12, 29 (2007) (holding that if trial counsel was not ineffective with respect to claim underlying allegation of ineffectiveness, then appellate counsel cannot be deemed ineffective for failing to raise claim of trial counsel's ineffectiveness). Accordingly, Appellant is denied relief with respect to this claim.

**31.** The confusion likely resulted from the fact that although the victim was shot on March 2, 1992, he did not die immediately and remained alive for several hours following the shooting. The case was not assigned to the Homicide Division of the Police Department until after the victim died.

### III. WHETHER APPELLATE COUNSEL WERE IN-EFFECTIVE IN NOT RAISING TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND PROPERLY CROSS–EXAMINE COMMONWEALTH WITNESS NATALIE GRANT AND FOR NOT INTRODUCING EVIDENCE IMPEACHING HER CREDIBILITY

 Appellant contends that appellate counsel's advocacy was defective because they failed to preserve for appellate review trial counsel's ineffectiveness in cross-examining eyewitness Natalie Grant. Appellant submits that trial counsel should have cross-examined Ms. Grant about her drug use and impeached her with prior inconsistent testimony and statements. Appellant's Brief, 27–31.[32] Appellant is not entitled to relief on this claim because he failed to raise the underlying claim respecting trial counsel during the post-verdict stage of the proceedings and the law precludes him from alleging his own ineffectiveness to overcome his waiver. Appellate counsel cannot be faulted for failing to raise a claim that Appellant rendered unavailable by failing to preserve it at the trial level. Accordingly, Appellant is denied relief with respect to this claim.

**32.** Appellant claims that trial counsel should have impeached Ms. Grant with respect to her denial that she used drugs the day of the shooting and with testimony she gave at Appellant's preliminary hearing regarding various aspects of the shooting. Appellant's Brief, 27–31.

IV. WHETHER TRIAL COUNSEL WAS INEFFEC-
TIVE FOR FAILING TO PREVENT THE INTRO-
DUCTION OF INADMISSIBLE EVIDENCE AT
TRIAL INCLUDING THE IMPROPER ADMIS-
SION OF MOTIVE EVIDENCE, "BAD ACT" EVI-
DENCE, AND THE AUTOPSY REPORT, AND
WHETHER APPELLATE COUNSEL WAS INEF-
FECTIVE FOR NOT ARGUING ON APPEAL
THAT THE TRIAL COURT ERRED IN INTRO-
DUCING, OVER OBJECTION, DR. PARK'S AU-
TOPSY REPORT

Appellant presents four separate sub-issues in this claim
which we will address in the order in which they are set forth
in his brief.

A. Were Prior Counsel ineffective for failing to prevent or
appeal the improper admission of drug-related motive
evidence at trial?

Appellant first argues that trial counsel was ineffective for
not objecting when Commonwealth witness Ronald "Skeet"
Williams testified that the victim told him that Appellant shot
him because he had "f-ed up a package of dope" belonging to
Appellant. N.T. 1/20/93, 44. Trial counsel's error was magni-
fied, Appellant asserts, because other evidence predicated on
the victim's hearsay statement regarding the reason for the
shooting was introduced and the prosecutor made broad use of
this testimony in his closing speech. *See* N.T. 1/27/93, 57–58.

Appellant acknowledges that this ineffectiveness claim was
previously litigated on direct appeal but argues that we should
reconsider it because this Court's treatment of the "state of
mind" exception following our decision in *Fletcher I* has been
inconsistent.[33] Appellant's Brief, 34. Appellant cites to *Com-*

---

33. This Court ruled that the claim was meritless for the following
reasons: 1) Williams's statement was admissible under the state-of-
mind exception to the hearsay rule; 2) trial counsel acted reasonably by
not interrupting Williams's testimony as he indicated that the informa-
tion in the statement was untrue; and 3) Appellant failed to establish
that the outcome of the trial would have been different had trial counsel
objected. *Fletcher I,* 750 A.2d at 275–76 & n. 20. This Court also held

*monwealth v. Laich,* 566 Pa. 19, 777 A.2d 1057, 1060 (2001), wherein this Court held that the victim's state of mind was irrelevant and that the introduction of such evidence required a new trial. Appellant's Brief, 31–35.

The Commonwealth asserts that this sub-claim is unreviewable because it was previously litigated in *Fletcher I,* 750 A.2d at 275–76, 276 n. 20, and Appellant has failed to present legal support for his contention that this Court should ignore the statutory bar set forth in 42 Pa.C.S. § 9544(a)(2). The Commonwealth adds that prevailing case law prohibits us from revisiting the issue. Commonwealth's Brief, 41–42 (citing *Albrecht,* 720 A.2d at 703).

Although this Court has placed limits on the scope of the "state of mind" exception since *Fletcher I* was decided, and held that a victim's state of mind cannot be introduced as substantive evidence that a defendant acted in conformity therewith, nevertheless no relief is due here. *See Commonwealth v. Moore,* 594 Pa. 619, 937 A.2d 1062, 1073 (2007); *Commonwealth v. Stallworth,* 566 Pa. 349, 781 A.2d 110, 118 (2001). Appellant attempts to end-run the previous litigation bar by his assertion that the law surrounding the state of mind exception has changed since his direct appeal. The PCRA does not recognize this type of claim. *See* 42 Pa.C.S. § 9543(a)(2)(i) (requiring an assertion of "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"). Moreover, Appellant does not separately raise a claim related to appellate counsel ineffectiveness. Accordingly, we deny relief on this claim.

that Williams's testimony about what the victim told him was the cause of the shooting "was relevant in establishing the *victim's state of mind* regarding his relationship with Appellant and was therefore admissible under the state of mind hearsay exception to establish 'the presence of ill will, malice or motive for the killing.' " *Fletcher I,* 750 A.2d at 276 (emphasis added).

B. Should evidence of a criminal record, alleged threats against a witness, and other "bad acts" have been stricken from the record at trial?

 Appellant next contends that trial counsel was ineffective because he failed to object to the introduction of evidence and to arguments of the prosecutor indicating that Appellant engaged in criminal activity, committed bad acts, and threatened a Commonwealth witness.[34] Although Appellant's brief makes reference to matters in the record he claims were prejudicial and should have been objected to, Appellant's argument is rambling, disjointed, and contradictory. Appellant also fails to discuss separately the nature and merits of the allegations raised, including whether these claims relate to evidence introduced at trial or arguments proffered by the prosecutor. Finally, Appellant fails to provide the law applicable to these different types of claims.[35] Instead, as the Commonwealth asserts, Appellant merely sets forth a laundry list of "undeveloped bullet points" implying that all references to bad acts committed by a defendant are *per se* inadmissible and that prior counsel was ineffective for not preserving claims arising out of the introduction of that evidence.[36] Com-

---

34. To the extent that this Opinion discusses waived claims of alleged trial court error or trial counsel ineffectiveness, it does so purely for purposes of reviewing appellant's derivative and cognizable claims of layered ineffectiveness, unless otherwise noted.

35. Appellant's brief states the jury was exposed to the following improper evidence and argument:
 - [Appellant's] supposed involvement with illegal drugs and involvement with criminals who allegedly had a 'hit' on a Commonwealth witness;
 - [Appellant's] purported drug use and the effect of drugs on society, N.T. 1/27/93, 133–136, 156–57, 116–17, 163;
 - The 'Junior Black Mafia' even though there was no evidence that [Appellant] was associated with that organization, N.T. 1/27/93, 112;
 - The allegation, without evidentiary support, that Ms. Grant was 'scared to death' because of alleged threats made toward her, N.T. 1/27/93, 143;
 - [Appellant's] photo-array picture was actually a mug shot, even after the prosecutor was warned by the court not to use the mug shot, N.T. 1/20/93, 62–63.
 Appellant's Brief, 35.

36. Although Appellant argues that trial counsel was ineffective for not objecting to the testimony and arguments set forth in the preceding

monwealth's Brief, at 44. Moreover, Appellant has failed to indicate whether any of these claims were preserved in a post-verdict motion, thus leaving the onus on this Court to determine whether these ineffectiveness claims were preserved for review. By failing to provide a coherent discussion of these claims, Appellant has waived them. *See Commonwealth v. Walter*, 600 Pa. 392, 966 A.2d 560, 566 (2009) (holding that failure to provide adequate discussion of issues raised and citation to supporting authority results in waiver of the issues); *Steele*, 961 A.2d at 798 n. 12 (holding that argument comprised of one sentence was inadequate to preserve issue for review); *Commonwealth v. Puksar*, 597 Pa. 240, 951 A.2d 267, 293–94 (2008) (holding lack of development of argument was fatal to claim).

 Appellant's claim that trial counsel was ineffective for not objecting to the evidentiary references to drugs and drug dealing has no merit. This evidence was introduced to establish a motive for the shooting of the victim. According to the evidence, the victim was shot by Appellant because he mishandled a drug package for Appellant. When evidence of drug involvement is relevant to prove motive, rather than criminal propensity, the introduction of such evidence is not improper. *See Commonwealth v. Malloy*, 579 Pa. 425, 856 A.2d 767, 777 (2004); *Commonwealth v. Donald Hall*, 523 Pa. 75, 565 A.2d 144, 149 (1989). Because the evidence was relevant and admissible, and appellant has not shown that its prejudicial effect outweighed its probative value as a matter of law, trial counsel was not ineffective for failing to object to its admission and the prosecutor's arguments related thereto. Given that trial counsel was not ineffective, appellate counsel was not ineffective for failing to allege the ineffectiveness of trial counsel. *Christopher Williams*, 936 A.2d at 29.

 Next, regarding Appellant's claim that trial counsel was ineffective for failing to object to a reference to a

footnote, in arguing that post-verdict and appellate counsel were ineffective, Appellant confuses the matter by later asserting in his brief that trial counsel did object and thus did preserve these issues for appellate review. Appellant's Brief, 36.

"mug shot," the record shows that Commonwealth witness Ronald Brooks testified that he identified a photograph depicting Appellant contained in a photo array. N.T. 1/20/93, 62–64.[37] Appellant is entitled to no relief on this claim because it was not raised in a post-verdict motion; appellate counsel therefore cannot have been ineffective.

C. Did Appellate counsel provide ineffective assistance in failing to raise the issue of the trial court's error in admitting the autopsy report without testimony from Dr. Park?

Appellant next submits that appellate counsel was ineffective because he failed to raise alleged trial court error in permitting the Commonwealth to introduce, over trial counsel's objection, a copy of the autopsy report prepared by Dr. Park because Dr. Park was not available to testify when the report was introduced in evidence.[38] Appellant's Brief, 37–39. According to Appellant, appellate counsel should have argued on appeal that the trial court erred by overruling trial counsel's *objection* to the introduction of the report because Dr. Park could have been called as a witness in the early stages of the trial as he did not leave the jurisdiction until several days of trial had taken place. Thus, Appellant submits that the Commonwealth's assertion that Dr. Park was unavailable to

**37.** Prior to the introduction of this testimony, trial counsel requested to see the trial court at sidebar. Although the sidebar conversation was not recorded, it appears that trial counsel did object to this testimony and that the objection was overruled. However, since counsel's objection does not appear of record, we cannot assume that trial counsel did object to the testimony concerning Appellant's photograph. The testimony in question made no reference to a mug shot or that police acquired the photograph because Appellant had engaged in prior criminal activity. Moreover, the jury did not see a "mug shot." Thus, Appellant would not have been entitled to relief with respect to this claim had he raised it in a post-verdict motion since he cannot establish either that the claim possesses arguable merit or that he was prejudiced by the testimony under review.

**38.** The report was introduced by way of stipulation. N.T. 1/26/93, 9–19. The record shows that trial counsel did not object to the introduction of Dr. Park's report. However, counsel objected to Dr. Hood testifying and giving his opinion about certain aspects of the case. N.T. 1/26/93, 3–7.

testify was false. Appellant also asserts that the report was inadmissible because it contained Dr. Park's opinions and Appellant did not have an opportunity to confront Dr. Park at trial. Appellant's Brief, 37–39 (citing *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974) (holding that it was a violation of law to admit into evidence an autopsy report for the truth of the opinions stated therein)).

■■■ This claim cannot serve as the basis for relief because the autopsy report was admitted into evidence by way of a stipulation; trial counsel never objected to its admission; and the trial court did not overrule an objection as Appellant contends. N.T. 1/26/93, 9–19.[39] As the report was introduced by stipulation, appellate counsel clearly cannot be held to have been ineffective for failing to argue that the trial court erred by overruling trial counsel's objection. Trial counsel never proffered any objection to the admission of Dr. Park's autopsy report.[40]

D. Did Appellate counsel provide ineffective assistance of counsel in failing to raise trial counsel's error in agreeing to a stipulation that Dr. Park would testify that the manner of death was homicide?

Appellant asserts that appellate counsel rendered ineffective assistance by failing to allege that trial counsel had been ineffective for stipulating to that part of Dr. Park's autopsy report wherein the doctor opined that the manner of death was homicide. Appellant claims that by stipulating to the admission of Dr. Park's entire autopsy report, trial counsel

39. The record does show that trial counsel, just prior to Dr. Hood's taking the witness stand, raised an objection and requested that Dr. Hood be precluded from testifying and giving his opinion about certain aspects of the case. However, trial counsel never objected to the introduction of the report. N.T. 1/26/93, 3–7.

40. Appellant also failed to raise this precise claim in his PCRA petition. A review of that petition shows that a variation of this claim was set forth in a footnote and merely raised the ineffectiveness of trial counsel for failing to object to the admission of the report because Dr. Park was unavailable to testify. PCRA Petition, 11 n. 4. Appellant completely ignores the fact that trial counsel stipulated to the admission of Dr. Park's report.

undermined Appellant's claim that the killing was committed in self-defense as it "left the jury with the unmistakable impression that Dr. Park believed the death was [an] intentional and unlawful killing." Appellant's Brief, 39–40. Appellant further implies that had trial counsel not stipulated that the manner of death was homicide, the jury may have concluded that he killed the victim in self-defense. Appellant's Brief, 39.

 Appellant did not raise this specific claim in a post-verdict motion. Therefore he is not entitled to relief on his claim that direct appeal counsel was ineffective for not alleging on appeal that trial counsel was ineffective for stipulating to the introduction of Dr. Park's report. In his Additional Supplemental Post–Verdict Motion, Appellant asserted that the attorney who represented him at his *preliminary hearing* was ineffective for stipulating to that part of Dr. Park's report listing the manner of death as homicide. *See* Additional Supplemental Post–Verdict Motions, filed 10/1/95, 3–5. He did not accuse trial counsel of being ineffective in this part of his supplemental post-verdict motion.

Later, in that same document, Appellant titled a claim as follows:

Trial counsel was ineffective for agreeing with the prosecutor to stipulation hearsay evidence concerning the manner and cause of death of the victim (Vaughn Christopher), and in doing so, allowed the prosecutor to knowingly and egregiously introduce falsified evidence to convey to the jury a false and illusive picture.

Additional Supplemental Post–Verdict Motions, filed 10/1/95, 53. Appellant then proceeded to argue that trial counsel was ineffective, not for stipulating that the manner of death was homicide, but because trial counsel permitted the Commonwealth to introduce a report that was "the product of manufactured falsification deliberately constructed to substantially undermine the [Appellant's] defense." Additional Supplemental Post–Verdict Motions, filed 10/1/95, 54.

To support this allegation, Appellant's supplemental post-verdict motion noted that the report listed the incorrect date for the autopsy and contained other misstatements as to the condition of the victim's body when it was received at the City morgue. Additional Supplemental Post–Verdict Motions, filed 10/1/95, 54–55. He submitted that these "falsifications" were intentional and that the prosecution knowingly permitted them to be presented to the jury in violation of the rules governing the conduct of a prosecutor and prohibiting the introduction evidence known to be false. Additional Supplemental Post–Verdict Motions, filed 10/1/95, 55–60. According to Appellant, had trial counsel reviewed the victim's hospital reports, he would have realized that the prosecutor was attempting to introduce a report containing material falsehoods and would not have stipulated to it.

Since Appellant did not present the underlying claim he now raises here in a post-verdict motion he cannot obtain relief on his derivative claim of appellate counsel ineffectiveness. Nevertheless, even if it is assumed that Appellant preserved a claim regarding trial counsel's ineffectiveness in stipulating to a report containing alleged falsifications and the opinions of Dr. Park regarding the manner of death, the underlying claim is without merit.

Appellant cannot show that trial counsel was ineffective for stipulating to the admission of Dr. Park's report, including that part of the report containing his opinions as to the cause and manner of death, because Appellant cannot establish that he was prejudiced by the introduction of the report. The law permits experts to render opinions based on factual findings made by another expert. *See Commonwealth v. Vandivner*, 599 Pa. 617, 962 A.2d 1170, 1178–79 (2009) (holding that pathologist may offer opinions premised, in part, on information received from another coroner); *see also Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630, 639–40 (1991); *Commonwealth v. James Smith*, 480 Pa. 524, 391 A.2d 1009, 1012 (1978). Thus, even in the absence of trial counsel's stipulation, the Commonwealth would have been permitted to have another medical examiner review the factual findings of

Dr. Park and render an opinion as to the cause and manner of death. Trial counsel's stipulation did not prevent the Commonwealth from introducing opinion testimony as to the cause and manner of the victim's death.

Moreover, Appellant is apparently confused about the meaning of the word "homicide." In medical terms, a "homicide" is any killing of a human being committed intentionally except for a suicide. *Commonwealth v. Jacobs,* 536 Pa. 402, 639 A.2d 786, 789 (1994); *see also Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 88 (2004). The Crimes Code expands this definition and states that "[a] person is guilty of criminal homicide if he intentionally, knowingly, recklessly, or negligently causes the death of another human being." 18 Pa.C.S. § 2501(a). Thus, the fact that trial counsel stipulated that the manner of death was homicide has no bearing on whether or not the killing was committed in self-defense. In point of fact, by asserting that he acted in self-defense, Appellant conceded that the killing was committed intentionally, *i.e.* a homicide, albeit one excused by the circumstances existing at the time it was committed. *See* 40 C.J.S. Homicide, § 1 (" 'Homicide' is a comprehensive word that means any killing of a human being, and it does not necessarily import a crime, but includes also those cases in which the law justifies or excuses the taking of human life.") (citations omitted).[41]

Consequently, Appellant's inability to establish either arguable merit or prejudice due to trial counsel's stipulation to the admission of Dr. Park's report would have rendered this claim meritless even if Appellant had preserved it.

▆▆▆ Next, Appellant's falsification claim is equally meritless because it is clear that any factual mistake contained in Dr. Park's report was inadvertent and unintentional. These factual discrepancies were *de minimis* and did not affect the outcome of the case.

41. The trial court instructed the jury to this effect, stating that the term "homicide" is a "generic term that embraces every killing of a human being by another" and that the term includes a killing committed in self-defense. N.T. 1/29/93, 85–86.

 Finally, Appellant's assertion that, if trial counsel had cross-examined Dr. Park he would have elicited testimony supporting his claim of self-defense, amounts to mere speculation. Other than presenting a "laundry list" of testimony Appellant speculates trial counsel might have elicited from Dr. Park, Appellant has failed to establish that had trial counsel not stipulated to the report, he would have succeeded in eliciting this testimony or that the outcome of the case would have been different had it been elicited.[42] Consequently, even if Appellant had preserved this issue, he would not have succeeded in obtaining relief as it is clear that direct appeal counsel was not ineffective for failing to argue that trial counsel was ineffective for stipulating to Dr. Park's report.

V. WHETHER THE GUILT PHASE JURY INSTRUCTIONS ON PROVOCATION, DUTY TO RETREAT, AND THE USE OF A DEADLY WEAPON INFERENCE WERE DEFECTIVE; WHETHER PRIOR COUNSEL WERE INEFFECTIVE IN FAILING TO OBJECT AND REQUEST PROPER INSTRUCTIONS AND FAILING TO RAISE THIS ISSUE ON APPEAL; WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING THAT THE JURY BE CHARGED ON SIMPLE ASSAULT, "PASSION AND PROVOCATION" VOLUNTARY MANSLAUGHTER, AND INVOLUNTARY MANSLAUGHTER; WHETHER APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT RAISING TRIAL COUNSEL'S INEFFECTIVENESS

Appellant challenges the effectiveness of standby and appellate counsel for not asserting trial counsel was ineffective for not objecting to several of the trial court's jury instructions. Appellant asserts that trial counsel should have objected to jury instructions defining provocation and duty to retreat in

---

**42.** In support of this claim, Appellant relies on an affidavit signed by Dr. Park a decade after he performed the autopsy wherein he commented favorably on evidence proffered by the defense. Despite Dr. Park's affidavit, Appellant cannot establish prejudice because Dr. Hood's testimony was consistent with Dr. Park's findings.

relation to self-defense, those setting forth the grounds upon which the jury could find Appellant guilty of "heat of passion" voluntary manslaughter, and the charge advising the jury of the permissible inference arising out of the use of a deadly weapon on a vital part of another person. Appellant further contends that standby and direct appeal counsel should have argued that trial counsel was ineffective for not requesting that the jury be instructed on simple assault and involuntary manslaughter. Appellant's Brief, 40–47.

Appellant cannot meet his burden of establishing that all prior counsel were ineffective regarding the claims of trial court error with respect to the jury instructions on provocation, duty to retreat, and "heat of passion" voluntary manslaughter or on his claim that trial counsel was ineffective for failing to request a charge on simple assault. These claims were not preserved in a post-verdict motion. As noted above, Appellant cannot succeed on any derivative appellate counsel ineffectiveness claim requiring proof that either he himself or standby counsel was ineffective.

Appellant, however, did preserve claims that appellate counsel was ineffective for failing to allege trial counsel's ineffectiveness regarding: 1) not requesting an involuntary manslaughter charge; and 2) not objecting to the trial court's instructions on the permissible inference arising out of the use of a deadly weapon on a vital part of a person's body. These claims were raised in a post-verdict motion. Thus, we will review whether direct appeal counsel was ineffective for failing to raise them on appeal.

Appellant asserts that trial counsel was ineffective for not requesting a jury charge on involuntary manslaughter because the jury may have determined that the shooting occurred recklessly as a result of the alleged struggle for the gun between Appellant and the victim. Appellant's Brief, 45. Appellant relies on *Commonwealth v. Terrell*, 482 Pa. 303, 393 A.2d 1117 (1978) (Opinion Announcing the Judgment of the Court), wherein the defendant was granted a new trial due to the failure to instruct the jury on involuntary manslaughter.

Appellant maintains that the facts of *Terrell* are similar to the facts herein and require the same result.[43]

The Commonwealth argues that this claim lacks arguable merit because the facts of the instant matter demonstrate that the victim was killed intentionally and not as the result of a reckless or grossly negligent act. The Commonwealth also points out that the plurality decision in *Terrell* has been called into question by this Court.[44] The Commonwealth further argues that trial counsel had a reasonable basis for not requesting an instruction on involuntary manslaughter, namely that the giving of such an instruction would have undermined Appellant's chance for an outright acquittal. Finally, the Commonwealth contends that Appellant cannot demonstrate prejudice because the jury convicted him of first-degree murder and thereby concluded that Appellant acted with the specific intent to kill. Thus, according to the Commonwealth, there "is no reasonable likelihood that, had an instruction on involuntary manslaughter been provided—*i.e.*, a reckless or negligent killing—[the jury] would have convicted him of that crime instead." Commonwealth's Brief, 67.

We hold that Appellant is not entitled to relief on this claim. Involuntary manslaughter is defined as a killing that occurs when, "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, [an individual] causes the death of another person." 18 Pa. C.S. § 2504(a). An instruction on involuntary manslaughter is not required unless it has been made an issue in the case and

43. In *Terrell, supra*, the defendant testified that, following a dispute, the victim pulled out a gun and in the ensuing struggle for the gun, the victim was shot and killed.

44. At the time *Terrell* was handed down, a defendant was entitled to a charge on involuntary manslaughter on request. *See Commonwealth v. Charles Smith*, 474 Pa. 559, 379 A.2d 96 (1977); *Commonwealth v. Ernest Jones*, 457 Pa. 563, 319 A.2d 142 (1974). This rule was abrogated in 1980 in the cases of *Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399 (1980), and *Commonwealth v. Fred Williams*, 490 Pa. 187, 415 A.2d 403 (1980).

the facts would support such a verdict. *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399, 402 (1980).

Instantly, the record established that Appellant killed the victim intentionally; there was evidence that Appellant walked up to the victim, slapped him, and then shot him in cold blood as he attempted to walk away from Appellant. Although Appellant told police that the victim had introduced the gun into the affray, Appellant stated that after seeing the gun he "rushed in and we struggled. I got my hand on the gun and I fired it two times toward his leg." N.T. 1/25/93, 77. According to Appellant's own version of the incident, he shot the victim intentionally. Thus, it is clear that the offense of involuntary manslaughter had not been made an issue in the case and the evidence would not have reasonably supported such a verdict. Consequently, trial counsel was not ineffective for failing to request an instruction on involuntary manslaughter. And, as trial counsel was not ineffective, direct appeal counsel cannot be deemed ineffective for failing to raise this issue on direct appeal. *See Commonwealth v. Dennis,* 597 Pa. 159, 950 A.2d 945, 978 (2008) (holding that where trial counsel has not been ineffective, appellate counsel cannot have been ineffective).

Appellant's assertion that trial counsel should have objected to the trial court's instruction on the permissive inference arising out of the use of a deadly weapon on a vital part of a human body rests on a claim that the charge given by the trial court on this point created an impermissible mandatory presumption. Appellant argues that this presumption relieved the Commonwealth of its burden to prove intent by instructing the jury that it *must* find that Appellant acted with an intent to kill if it found he used a deadly weapon to cause injury to a vital part of the victim's body. Appellant also argues that the charge was defective because the trial court did not instruct the jury that the inference applied only if it found that Appellant intended to cause injury to the victim's liver, which was the primary cause of death. Appellant's Brief, 45–47.

The Commonwealth contends that these claims lack merit because the charge excerpt Appellant objects to, even when

read in isolation, did not instruct the jury that it was required to find intent to kill upon finding that Appellant used a deadly weapon on a vital part of the victim's body. In addition, the Commonwealth argues Appellant's complaint focuses on a single excerpt and that when the trial court's charge is viewed in its entirety it is clear that the instruction did not create a mandatory presumption. Finally, the Commonwealth contends that Appellant's assertion that the trial court's charge was defective and that trial counsel should have objected because the charge did not advise the jury that it could apply the inference only if it found that Appellant intended to shoot the victim in the liver lacks merit. According to the Commonwealth, Appellant's claim fails because this Court has ruled that the inference regarding intent to kill applies to the *use* of a deadly weapon on a vital part of another's body and does not require proof that the actor intentionally *aimed* a weapon at a vital part of the body. Commonwealth's Brief, 67–69.

When reviewing a challenge to jury instructions, the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. *Daniels,* 963 A.2d at 430. *See also Commonwealth v. Wright,* 599 Pa. 270, 961 A.2d 119, 145 (2008); *Commonwealth v. Carson,* 590 Pa. 501, 913 A.2d 220, 255 (2006), *cert. denied,* 552 U.S. 954, 128 S.Ct. 384, 169 L.Ed.2d 270 (2007). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273, 1274 (1990). A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury. *Wright,* 961 A.2d at 145.

This Court discussed permissible inferences in *Carson, supra:*

A permissive inference is an evidentiary tool that permits a fact-finder to proceed on inferential reasoning, such that a factfinder may infer an elemental fact from proof of a basic fact. *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d

384, 389 (2000). When a permissive inference leaves the fact-finder free to accept or reject the inference, a permissive inference does not affect the burden of proof and it only affects the beyond a reasonable doubt standard when, under the facts of the case, there is no way the fact-finder could arrive at the conclusion permitted by the inference. *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777 (1979); *see also Commonwealth v. [Reginald] Hall*, 574 Pa. 233, 830 A.2d 537, 547–48 (2003). We have opined that a "[s]pecific intent to kill can be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Damon Jones*, 530 Pa. 591, 610 A.2d 931, 938 (1992).

*Carson*, 913 A.2d at 260.

Appellant claims that the following excerpt from the trial court's instruction constituted a mandatory inference because it required the jury to find Appellant acted with intent to kill if it found he used a deadly weapon on a vital organ of the victim:

There is case law in Pennsylvania which states that an inference of the intent to kill which arises from the killer's use of a deadly weapon to cause injury to a vital part of the deceased, in and of itself, is sufficient to support a first degree murder conviction in the absence of other contradicting facts and circumstances in evidence in a specific case.

N.T. 1/29/93, 97.

No ineffectiveness occurred here because the claim is without arguable merit. The excerpt above was preceded by explicit instructions that the inference arising out of the use of a deadly weapon on a vital part of the body was permissive and could be rejected by the jury. N.T. 1/29/93, 95–97. In fact, the trial court instructed the jury as follows on the use of a deadly weapon inference:

There is evidence in this case that the deceased died of two gunshot wounds that pierced the kidney and the liver. As to that, the law holds that where anyone, without sufficient cause or provocation, unlawfully kills another by using a

deadly weapon upon a vital part of the victim's body with the manifest intention to so use it, an inference *may be drawn,* once again, as was the inference of malice, that could arise by the use of deadly weapon on the vital part of a body. *This is a permissible evidentiary inference and you don't have to draw it.* It may be drawn in the absence of qualifying circumstances. By common knowledge, such use of a deadly weapon is likely to cause death. Thus, an intent to kill *may* be inferred by reason of the killer's use of a deadly weapon on a vital part of the body of the victim. You will recall the definition of a deadly weapon and what constitutes a vital part of the human body.

Note well, *you are not to infer this intent to kill if the facts and circumstances indicate a contrary intent. In short, you are not bound by this inference of the intent to kill arising from the killer's use of a deadly weapon upon a vital part of the body, but you may or may not apply it under the facts and circumstances as you find them and as you see fit in your intelligence and mutual and collective wisdoms.* Further, the nature of the weapon used may be quite material in ascertaining whether there was or was not an intent to kill, but that intent must still, in every case, be collected from all of the attending circumstances no matter what may have been the instrument of death.

In conclusion, this inference of the intent to kill arising from the killer's use of a deadly weapon to a vital part of the victim's body is a *permissible matter of evidence for your consideration. As factfinders, you need not accept it and you may reject this inference where the surrounding facts and circumstances negate the existence of such an inference or you may ignore it if such negating facts or circumstances are not presented in a specific case.*

N.T. 1/29/93, 95–97 (emphasis added). Thus, when viewed in its entirety, it is clear that the trial court's instruction on this issue was proper. Trial counsel was not ineffective for failing to object to this part of the trial court's charge and therefore appellate counsel was not ineffective for failing to raise trial counsel's ineffectiveness on this issue. *Dennis, supra.*

■ We also reject Appellant's claim that trial counsel should have objected to the lack of an instruction advising the jury that in order to apply the permissive inference arising out of the *use* of a deadly weapon on a vital part of another's body, the jury had to find that Appellant intended to shoot the victim in his liver. This Court has stated that the "critical inquiry is the use of a deadly weapon on a vital part of the body ... not the intentional aiming of the weapon at a vital part of the body." *Commonwealth v. Washington,* 592 Pa. 698, 927 A.2d 586, 607 (2007) (emphasis in original). Thus, the trial court here had no obligation to instruct the jury that it could not apply the inference without first finding that Appellant intended to shoot the victim in his liver or any other vital part of his body and trial counsel was not ineffective for failing to object on this point. Consequently, we also hold that appellate counsel was not ineffective for not arguing trial counsel's ineffectiveness and deny relief on this claim.

## VI. WAS APPELLATE COUNSEL INEFFECTIVE FOR FAILING TO ADEQUATELY RAISE THE ISSUE OF WHETHER THE PROSECUTOR ENGAGED IN PROSECUTORIAL MISCONDUCT?

Appellant contends that appellate counsel was ineffective for not raising on appeal a claim that the prosecutor engaged in prosecutorial misconduct during the trial. First, Appellant asserts that the prosecutor misled the trial court when he advised the court that the medical examiner Dr. Park was not available to testify because he was out of the country and would not return for two weeks. N.T. 1/26/93, 3–4.[45] According to Appellant, to the extent that the remark implied that Dr. Park was completely unavailable to testify at Appellant's trial, it was misleading because Dr. Park did not depart the United States until several days after trial began and conceivably could have testified before he left. Appellant's Brief, 48–49. Appellant claims he was prejudiced by the misrepresentation because Dr. Hood, who testified in Dr. Park's stead,

---

**45.** Trial counsel objected "generally" to the unavailability of Dr. Park. N.T. 1/26/93, 4.

"destroyed [Appellant's] defense and left the jury with a biased and factually incorrect understanding of the forensic evidence." Appellant's Brief, 49.

Appellant also argues that appellate counsel was ineffective for not arguing on appeal that several comments made by the prosecutor during his closing speech to the jury disparaged trial counsel, misstated the law, and were beyond the evidence, and thus deprived Appellant of a fair trial. Appellant's Brief, 49–52.

Appellant's claim that appellate counsel was ineffective for not arguing on appeal that the prosecutor misled the trial court by stating that Dr. Park was out of the country and not available to testify entitles him to no relief because the claim was not raised in his PCRA petition. Thus, pursuant to Pa.R.A.P. 302(a), Appellant is not entitled to review of this claim because it was raised for the first time in this appeal.

Appellant's assertion that direct appeal counsel was ineffective for failing to raise on appeal that the prosecutor committed prosecutorial misconduct in his closing speech to the jury during the guilt-phase of the trial involves three separate subclaims. First, Appellant alleges that direct appeal counsel should have complained that the prosecutor deprived Appellant of a fair trial by making comments that disparaged and demeaned Appellant's trial counsel personally and his defense strategy.[46] Appellant's Brief, 50–51. Second, Appellant con-

**46.** Appellant's claim is premised on the following remarks:

I listened to Mr. Patrizio. It seemed like a totally different man today. It must have been Skippy, the evil twin brother that has been here for the past 10 days. All of a sudden today when he makes his closing argument to you he is like a new man, quiet, subdued, relaxed, calm. He changed his total spots. You can't change your spots. You are who you are. You can't be kind as a jury. You can be sold a bill of goods. You heard the evidence in this case, you saw the witnesses and you heard what they said.

It is very interesting what counsel did. He gets up to you and starts his closing by apologizing to you. He spends 10 days berating, dehumanizing, attacking people, one after another, and liking it when he was doing it, having a good time, and now today, I'm sorry if I offended anybody, I'm sorry, that's really not me, I am sorry if I beat a dead horse. Well, there is nothing to be sorry about. He did what he thought was best for him and his client and that was that he was

tends that the prosecutor misstated the law regarding the parties' respective burdens of proof. According to Appellant, the prosecutor placed the burden of proof upon Appellant by arguing that in order to accept Appellant's defense, the jury had to believe everything the defense presented at trial.[47] Appellant's Brief, 51.

> trying to rile up the witnesses any which way he can, berate them, calling them junkies, calling them whores and prostitutes and thieves, get a jump on them, make them emotional, make them upset, any which way he could and he did that from time to time in his own little way. Now today, all of a sudden, calm, cool, collected. Now, it is very interesting what he did during the course of the trial and I think most of you are smart. I don't mean wise smart in terms of a wise guy, I mean in terms of you see what is going on, you see what he is doing.
>
> \* \* \* \*
>
> A little bit about the defense. You saw how it has been going for the past 10 days. I can only describe the defense and the way it was put on and the cross-examination. It reminded me a little bit like a Cadillac, one of those old four-door sedan Seville's stuck in the mud, beautiful, came out of the shop, it is beautiful, it is stuck in the mud, revving its engines, looking real good, spattering mud all over the place, it is not going anywhere, it is not making any points, loud, boisterous, shiny and nothing is really happening. Then the attorney comes up and say, boy, I am spattering this mud over here, didn't I do a good job? It is a masterpiece, isn't it? No, the Cadillac went nowhere, all it did is make a lot of noise.
>
> N.T. 1/27/93, 91–93, 109.

**47.** The remarks under review are:

> Now, in order to acquit the defendant in this case or find him guilty of anything less than first degree murder, you are going to have to do a number of things. You are going to have to believe a number of things. The only way that that can be a conclusion in this case is if you find all of the following things: One, that Ronald Williams, Skeet, never, ever gave the statement that he gave to Detective Bova and Detective Schol on March 5th. You will have to find, that it is one of the prongs of the test, that you are going to have to find that he never, ever, gave that statement, he never said that. On the other hand, you are going to have to find in addition to that, that Detective Schol and Detective Bova both lied. He said, oh, they are good detectives, they are overreaching. Well, that is not—that is a load of crap, frankly. Let's call it what it is. He is accusing them of lying, manufacturing evidence against an innocent man. That's a crime. That's what he is accusing them of. Let's not gloss it over. You have to believe in addition to that, that Bova and Schol after 20 or 15 years, whatever it has been, that for this case, a witness of the Homicide Unit himself for him, for this case, they are going to put their badge on the line, their jobs on the line, their family on the line, they are going to put

Third, Appellant alleges that direct appeal counsel should have raised issues asserting that the prosecutor presented arguments "that went well beyond the evidence presented, encouraging the jury to consider inflammatory and irrelevant matters." *Id.* at 52. Specifically, he complains that direct appeal counsel should have claimed that the prosecutor's extensive remarks on Appellant's drug "use" and the effect illicit drugs have on society turned the trial "into a plebiscite on drugs and drug dealers and their destructive effect on society." *Id.*[48] Appellant also argues that the prosecutor implied that Appellant was associated with the Junior Black Mafia (JBM), a notorious drug gang, in the absence of evidence Appellant had an association with the JBM or that the JBM had any connection to the case. Appellant further asserts that the prosecutor engaged in rank speculation when he argued that Ronald Williams denied having given police a statement inculpating Appellant because he disliked the prosecution and hoped to curry favor with fellow inmates. Finally,

their retirement on the line, they are going to put their pension on the line . . . and lie.

\* \* \* \*

In addition to that, you can't stop there, you have to believe that Schol or some other detective that we don't even know about hid Natalie Grant for three weeks then found Natalie Grant for three weeks, threatened her, coerced her, made her give a statement, but not give a truthful statement, give a false statement. They made her give a false statement and that she did in fact give a false statement consistent with what the detectives made her or told her to do. Then you have to believe that they then brought her to the preliminary hearing and forced her to lie on the stand and testify falsely about the incident. You have to believe that as well, and at a minimum you then must believe everything the defendant tells you about what happened, his own version, you have to believe all that and believe despite where he says it happened, when it happened, who was there when it happened, how it happened, how many shots were fired, how the shots were fired, despite all the information that he gives that corroborates their testimony, he is the one to believe and no one else. You have to do all of those things, all of those things for you to ever acquit in this case.
N.T. 1/27/93, 105–108.

48. Although Appellant complains that the prosecutor made comments on Appellant's drug "use," it is clear that he meant Appellant's "involvement" with drugs given that the prosecutor did not accuse Appellant of being a drug "user."

Appellant asserts that the prosecutor misstated the evidence by contending that Ms. Grant "was scared to death" to testify and by making reference to a witness who did not testify. *Id.*[49]

The Commonwealth submits that these claims do not entitle Appellant to relief for various reasons. First, the Commonwealth contends that the claims were not preserved and were waived. Even if not waived, the Commonwealth argues that these claims have either been litigated previously or are meritless and thus direct appeal counsel was not ineffective for failing to raise them on direct appeal. Commonwealth's Brief, 69–70. Specifically, with respect to Appellant's claim that the prosecutor deprived him of a fair trial by disparaging trial counsel and his defense strategy, the Commonwealth asserts that no relief is due because appellate counsel raised this claim on direct appeal and it was denied. *See Fletcher I,* 750 A.2d at 272–73. Thus, the Commonwealth argues that this claim is not cognizable because it was litigated previously and cannot be litigated anew in accordance with 42 Pa.C.S. §§ 9543(a)(3) and 9544(a). Commonwealth's Brief, 71.

The Commonwealth also contends that direct appeal counsel was not ineffective for failing to assert on appeal that the prosecutor misstated the law or shifted the burden of proof in his comments on the defense presented by Appellant because the remarks merely "discussed the relevant evidence of guilt, properly responded to defense attacks on the Commonwealth's evidence, and were well within the scope of acceptable oratorical flair." *Id.* at 72. The Commonwealth further argues that even if the remarks could be inferred to have shifted the burden of proof to Appellant, the trial court instructed the jury that Appellant was presumed innocent and that the burden of proof rested solely on the Commonwealth. *Id.*

The Commonwealth next argues that direct appeal counsel was not ineffective for not complaining on appeal about the prosecutor's references to drugs in general and his assertion that Appellant "used" drugs because such comments were

**49.** N.T. 1/27/93, 105, 112–114, 116–117, 133–36, 143, 163.

relevant to motive and were made in response to closing comments made by trial counsel, who argued to the jury that the Commonwealth's witnesses were unworthy of belief because they were drug addicts. *Id.* at 72–73. In addition, the Commonwealth notes that direct appeal counsel unsuccessfully argued on appeal that the prosecutor prejudiced Appellant by arguing that the evidence that Appellant was a drug dealer was overwhelming and that the Commonwealth's witnesses were not "throw away people" because they used drugs. *See Fletcher I,* 750 A.2d at 273.

The Commonwealth further asserts that there is no merit to Appellant's claim that direct appeal counsel should have challenged the propriety of the prosecutor's reference to the JBM because the record shows that the reference was fleeting, did not associate Appellant with the JBM, and was intended to explain why Robert "Skeet" Williams may have disavowed his statement to police while testifying. Commonwealth's Brief, 73. The Commonwealth also argues that direct appeal counsel was not ineffective for failing to argue on appeal that the prosecutor's argument that Ms. Grant was scared to testify was improper because there was testimony presented at trial that she was afraid and scared to testify. *Id.* In addition, the Commonwealth contends that direct appeal counsel did not provide ineffective assistance of counsel by not raising a claim asserting that the prosecutor impermissibly referred to witnesses who did not testify; the witnesses did testify during the trial. *Id.*

Finally, the Commonwealth asserts that even if the prosecutor did step outside the record, the remarks were not so unduly prejudicial as to deprive Appellant of a fair trial and that they constituted fair inferences from the evidence. Moreover, the Commonwealth submits that any prejudice was cured by instructions the trial court gave to the jury advising that counsels' arguments were not evidence and that its own recollection of the evidence controlled. *Id.* at 74.

Appellant is not entitled to relief on these claims for myriad reasons. First, direct appeal counsel cannot be

deemed ineffective with respect to comments he did indeed challenge on direct appeal, specifically: the comments denigrating trial counsel personally; those criticizing trial counsel's defense strategy; and those commenting on Appellant's personal involvement with drugs and those about drugs in general. Appellant's allegations of ineffectiveness are facially meritless in light of the fact that direct appeal counsel raised these claims on direct appeal and in the absence of any argument regarding appellate counsel's performance related to his advocacy of these raised claims. *Fletcher I*, 750 A.2d at 273.

Next, Appellant is entitled to no relief on those comments concerning: the JBM; Ronald Williams's reasons for not cooperating with the Commonwealth; the purported improper shifting of the burden of proof; the fact that Ms. Grant was scared to testify; and a witness who allegedly did not testify, because these claims were not raised and preserved in a post-verdict motion either directly or in the context of an ineffectiveness claim. Appellate counsel cannot be deemed ineffective for failing to raise claims that were defaulted below. We therefore deny Appellant relief with respect to this claim.

VII. WAS APPELLATE COUNSEL INEFFECTIVE IN FAILING TO RAISE TRIAL COUNSEL'S FAILURE TO INVESTIGATE AND PRESENT SIGNIFICANT MITIGATING EVIDENCE DURING APPELLANT'S PENALTY HEARING INCLUDING HIS BACKGROUND, EARLY CHILDHOOD, EDUCATIONAL AND DEVELOPMENTAL PROBLEMS, MILITARY RECORD, GOOD CHARACTER AND REPUTATION, TRAUMATIC EXPERIENCES, AND BOXING–INDUCED BRAIN DAMAGE? [50]

Appellant accuses appellate counsel of providing ineffective assistance for failing to argue on direct appeal a claim

---

50. Appellant was a professional boxer who used the moniker Anthony "Two Guns" Fletcher.

that trial counsel was ineffective for failing to conduct a complete investigation of Appellant's background in order to gather mitigating evidence for the penalty hearing. Appellant complains that trial counsel did not obtain any witnesses other than those suggested by Appellant or delve into Appellant's troubled childhood history, his educational background, the status of his mental health, or other areas relevant to mitigation. In addition, Appellant claims that trial counsel was ineffective for not introducing evidence that he had a good reputation for being peaceful and non-violent. Appellant's Brief, 53–69. Appellant's appellate counsel ineffectiveness claim fails. He failed to assert the underlying claim respecting trial counsel in a post-verdict motion and thus cannot establish that appellate counsel was ineffective. We therefore deny relief.

## VIII. WERE APPELLATE COUNSEL INEFFECTIVE FOR FAILING TO RAISE THE ISSUE OF TRIAL COUNSEL'S FAILURE TO REQUEST A CONTINUANCE BEFORE THE PENALTY PHASE OF TRIAL?

 Appellant contends that appellate counsel were ineffective because they did not preserve for appellate review a claim that trial counsel was ineffective for failing to request that the penalty hearing be postponed. Appellant asserts that he was distraught and rendered incapable of communicating effectively and intelligently with trial counsel as a result of the guilty verdict. In addition, he claims that trial counsel should have requested a continuance because he was unprepared to represent Appellant during the penalty hearing. Appellant's Brief, 70–72. Appellant is not entitled to relief on this claim because he did not raise the underlying claim concerning trial counsel in a post-verdict motion.

IX. WAS APPELLATE COUNSEL INEFFECTIVE FOR FAILING TO RAISE THE ISSUES OF THE TRIAL COURT'S ERROR IN PERMITTING THE DRUG INVOLVEMENT AGGRAVATING CIRCUM-STANCE TO GO TO THE JURY, AND OF TRIAL COUNSEL'S FAILURE TO OBJECT?

Appellant states that direct appeal counsel was ineffective in failing to argue that the Commonwealth did not present sufficient competent evidence to sustain the "drug" aggravator set forth in 42 Pa.C.S. § 9711(d)(14). Appellant also faults direct appeal counsel for failing to raise trial counsel's ineffectiveness for not objecting to the presentation of this aggravator to the jury. Appellant's claims rest on the assertion that the "state of mind" evidence that Appellant shot the victim because the victim "f-ed" up a drug package constituted inadmissible hearsay and even if such evidence was properly admitted, such evidence was insufficient, standing alone, to prove this aggravator beyond a reasonable doubt. Appellant's Brief, 72–76.

The Commonwealth asserts this issue is without merit because this Court already has ruled that the evidence was sufficient to establish this aggravator beyond a reasonable doubt. *See Fletcher I,* 750 A.2d at 281. The Commonwealth further submits that the evidence was admissible and sufficient to establish this aggravator. Commonwealth's Brief, 84–86.

 Although Appellant incorporated his attacks on the sufficiency of the evidence to support this aggravator as a claim of ineffective assistance of direct appeal counsel, Appellant is not entitled to relief on this claim of appellate counsel ineffectiveness because he failed to raise the underlying claim concerning trial counsel in a post-verdict motion.[51]

---

51. In *Fletcher I,* this Court ruled that the evidence was sufficient to support this aggravator. 750 A.2d at 281.

X. WERE APPELLATE COUNSEL INEFFECTIVE FOR FAILING TO RAISE TRIAL COUNSEL'S DEFICIENT PERFORMANCE IN NOT OBJECTING TO THE "GRAVE RISK" AGGRAVATOR, NOT OBJECTING TO ARGUMENTS PRESENTED BY THE PROSECUTOR WITH RESPECT TO THIS AGGRAVATOR, AND NOT OBJECTING TO AN ERRONEOUS JURY INSTRUCTION?

██ Appellant raises three separate claims alleging that appellate counsel were ineffective because they did not assert that trial counsel was ineffective in several respects regarding the "grave risk" aggravator set forth in 42 Pa.C.S. § 9711(d)(7). Appellant first asserts that standby and appellate counsel were ineffective for not raising trial counsel's ineffectiveness in failing to object to the Commonwealth's presentation of expert testimony related to the firing characteristics of the weapon and ammunition used by Appellant to kill the victim, specifically, testimony indicating that bullets fired from the murder weapon typically can travel six-tenths of a mile. N.T. 2/1/93, 20–23. Appellant contends that this testimony was prejudicial and irrelevant and trial counsel should have objected. He also claims testimony related to the firing characteristics of a murder weapon should have been precluded because it permits a fact-finder to find this aggravator in every case where a shooting occurs in an urban setting. Appellant's Brief, 76–78.

Second, Appellant contends that appellate counsel were ineffective for failing to argue that trial counsel failed to object to the trial court's instructions on this aggravator because the instructions did not contain language limiting Section 9711(d)(7)'s application to persons in close proximity to the site of the murder, and this omission rendered the trial court's instructions overbroad and vague. Appellant's Brief, 78–79.

Third, Appellant states that appellate counsel provided deficient representation by failing to assert that trial counsel was ineffective for not objecting to closing comments made by the prosecutor in the penalty phase that "essentially told the jury that the risk of harm inherent in shooting a gun in an urban

setting is sufficient for establishing the (d)(7) aggravator." Appellant's Brief, 80.

The Commonwealth submits that these claims of appellate counsel ineffectiveness are waived because Appellant failed to raise the underlying claims of trial counsel ineffectiveness in a post-verdict motion. Upon review of the record, we agree that the underlying claims were not raised in a post-verdict motion and thus Appellant is not entitled to relief on his derivative claims.

XI. SHOULD APPELLANT'S DEATH SENTENCE BE OVERTURNED BECAUSE APPELLATE COUNSEL FAILED TO RAISE AN ISSUE ALLEGING THAT THE TRIAL COURT ERRED BY SUGGESTING TO THE JURY THAT A LIFE SENTENCE CARRIED A POSSIBILITY OF PAROLE AND BECAUSE THE COURT FAILED TO INSTRUCT THE JURY ON THE MEANING OF A SENTENCE OF LIFE IMPRISONMENT?

Citing the plurality decision in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), Appellant claims he is entitled to a new penalty hearing because standby and appellate counsel failed to raise an issue alleging that trial counsel was ineffective for not objecting when the trial court failed to define what a life sentence means in Pennsylvania, and when the trial court inaccurately responded to a question posed by the jury asking what the term "life sentence" means. In *Simmons*, a plurality of the United States Supreme Court ruled that a trial court must advise a jury that a defendant is not entitled to parole if a prosecutor places the future dangerousness of the defendant in issue and the defendant requests such an instruction. *See also Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 90 (2008). According to Appellant the trial court deprived him of due process of law by failing to include in its instructions a declaration that a life sentence in Pennsylvania carries no possibility of parole.[52] Appellant also claims that trial counsel should have objected

52. *See* N.T. 2/3/93. 31–47.

when the trial court told the jury that it should not be concerned with the meaning of "life sentence." [53] Appellant's claims are premised on a contention that the trial court was required to tell the jury that a life sentence is defined as one without possibility of parole. Appellant's Brief, 81–86.

The Commonwealth first claims that no relief is due Appellant because the issues he presents herein were waived; they were not raised on direct appeal. The Commonwealth further asserts that Appellant's claims have no merit because trial courts were not required in 1993 to define life imprisonment and were specifically prohibited from advising a jury about the possibility of parole. Therefore, in the Commonwealth's view, direct appeal counsel was not ineffective for not raising these claims. Commonwealth's Brief, 89–92.[54]

Because the claims allege ineffective assistance of appellate counsel for not raising the issues on direct appeal, we must review the claims pursuant to the ineffectiveness standard. *See Commonwealth v. Ronald Collins*, 585 Pa. 45, 888 A.2d 564, 573 (2005) (holding that a Sixth Amendment claim alleging ineffective assistance of counsel raises a standalone claim entitled to independent review).

 Appellant is entitled to no relief because this Court has clearly ruled that an appellant may not maintain a claim of ineffectiveness "for failing to request an instruction under *Simmons* where counsel's actions were predicated on well-established Pennsylvania law prohibiting the grant of such

**53.** The jury asked the following question: "What does the sentence of life imprisonment mean in terms of years, parole, *et cetera.*" N.T. 2/3/93, 50–51. The trial court advised the jury that, "[b]y recourse to decisional law, my answer to the question that you have just read is that that's a question to which there is no answer." N.T. 2/3/93, 51. The trial court then advised the jury that it should not concern itself with the issue of whether Appellant could be pardoned or paroled. *Id.*

**54.** It appears that Appellant raised his *Simmons* claim in a post-verdict motion. The Commonwealth notes that before he became standby counsel, Mr. Berry raised a version of these claims in a brief he prepared with the assistance of the Philadelphia Defender Association's "Capital Punishment Division." The Commonwealth further notes that the brief acknowledged that the trial court was legally prohibited from advising the jury that "life means life." Commonwealth's Brief, 90 n. 44.

requests or for failing to predict that the law would change ..." *Commonwealth v. Rios*, 591 Pa. 583, 920 A.2d 790, 819–20 (2007) (indicating that long-standing precedent prohibited capital juries from hearing about Pennsylvania's life without parole statute).[55] Because trial counsel cannot be deemed ineffective for failing to predict a change in the law, it is clear that trial counsel was not ineffective for failing to request a *Simmons* instruction. *See Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 464 (2004) (counsel cannot be held to be ineffective for failing to predict changes in the law). Appellant, therefore, cannot meet the arguable merit prong of the ineffectiveness test with respect to appellate counsel and thus relief on this claim is denied.

> XII. WERE THE PENALTY PHASE JURY IN-STRUCTIONS ERRONEOUS AND UNCONSTI-TUTIONAL BECAUSE THEY ADVISED THE JURY THAT IT HAD TO EXPLAIN WHY IT RE-JECTED DEATH UPON IMPOSING A LIFE SENTENCE, IMPLIED THAT MITIGATING CIRCUMSTANCES HAD TO BE FOUND UNAN-IMOUSLY, AND INCORRECTLY DEFINED WHAT AGGRAVATING AND MITIGATING CIR-CUMSTANCES WERE, AND WERE BOTH TRI-AL AND APPELLATE COUNSEL INEFFEC-TIVE IN FAILING TO RAISE THE ISSUE?

Appellant submits that appellate counsel were ineffective because they failed to raise claims alleging that trial counsel was ineffective for not objecting to three instructions given the jury by the trial court during the penalty hearing. Appellant states that the trial court erred because its instructions improperly: 1) implied that the sentence of death was the right verdict by directing the jury that if it imposed a life sentence it had to explain why it rejected the death penalty, N.T. 2/3/93,

---

**55.** Appellant has not separately developed an argument that appellate · counsel was ineffective for failing to argue for the retroactive application of *Simmons,* even though he forwarded a *Simmons* argument in post-verdict motions.

47;[56] 2) implied that the jury was required to find mitigating circumstances unanimously, in violation of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988);[57] and 3) told the jury that aggravating circumstances are "things that make a first degree murder case either more terrible or less terrible in nature." Appellant's Brief, 86–89.[58]

■ Appellant is not entitled to relief on any of these ineffectiveness claims respecting appellate counsel. The underlying claims respecting trial counsel were not raised in a post-verdict motion and therefore Appellant cannot meet his burden of proving that all counsel were ineffective. Although a review of Appellant's Supplemental Post–Verdict Motions shows that Appellant appeared to have raised a *Mills* issue, Appellant did not raise the issue presented here. Instead, quoting from jury instructions the trial court gave during the guilt phase of the trial directing the jury that its verdict had to be unanimous, Appellant asserted that these guilt-phase instructions may have confused the jury during the penalty phase and caused it to believe that to find a mitigating factor its decision had to be unanimous, in violation of *Mills*. *See*

**56.** Appellant complains that the trial court erred by instructing the jury as follows:

> In section C2, you will explain why you are rejecting the death penalty and imposing the sentence of life imprisonment. If the reason for rejecting the death penalty is that either one or more of you agree that there are no aggravating circumstances, you check C1, if the reason you are rejecting the death penalty is that all of you agree that one or more mitigating circumstances are not outweighed by any aggravating circumstances, then you check Block C2 and you give the reason.

N.T. 2/3/93, 47. In *Natividad*, 938 A.2d at 338–39, this Court held that an instruction similar to this one was not *per se* unconstitutional. Thus, even if Appellant preserved this claim, he would not be entitled to relief.

**57.** *Mills* holds that a death sentence must be vacated if there is a substantial probability that the trial court's jury instruction could have led reasonable jurors to conclude they could only consider mitigating circumstances which they unanimously found to exist. 486 U.S. at 384, 108 S.Ct. 1860.

**58.** In numerous cases, this Court has ruled that an instruction that aggravating and mitigating circumstances are things that make a first-degree murder "more or less terrible" is not improper. *See Washington*, 927 A.2d at 613–14; *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 587 (2002).

Additional Supplemental Post–Verdict Motion, filed 10/1/95, 20–21. Consequently, Appellant did not preserve the underlying claims he raises here in a post-verdict motion and therefore, he is not entitled to relief on this "layered" claim of appellate counsel ineffectiveness.

 To the extent that it could be asserted that Appellant preserved a *Mills* issue, a careful review of the trial court's penalty-phase jury instructions demonstrates that the claim lacks merit, and direct appeal counsel was not ineffective for failing to raise it on appeal. Claims predicated on alleged errors involving jury instructions are governed by the following standards:

> The trial court possessed broad discretion in phrasing its instructions to the jury and was permitted to choose its own wording so long as the law was clearly, adequately and accurately presented to the jury for consideration. Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. It is axiomatic that, in reviewing a challenged jury instruction, an appellate court must consider the charge in its entirety, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. Instructions will be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury properly in its deliberations.

*Rainey,* 928 A.2d at 242, 243 (internal citations omitted). In assessing whether a jury instruction violates *Mills,* the reviewing court must ascertain whether there is a reasonable likelihood that the jury understood the instructions as precluding consideration of the mitigating evidence introduced by a capital defendant. *Boyde v. California,* 494 U.S. 370, 385, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

In charging the jury with respect to aggravating and mitigating circumstances, the trial court herein stated:

> When voting on the general findings, you are to regard a particular aggravating circumstance as present only if all of you agree that it is present. On the other hand, each of you

is free to regard a particular mitigating circumstance as present despite what other jurors may believe. Simply stated, each of you is free to regard a mitigating circumstance as present regardless of what other jurors believe about the circumstance or circumstances. As a matter of law, a death penalty jury cannot be required to make unanimous findings regarding each specific mitigating circumstance. Under the law, each juror must ultimately find each mitigating circumstance for himself and act accordingly. In accordance, each of you can individually consider any and all evidence relevant to mitigation, even though all twelve of you have not agreed to the existence of a particular mitigating circumstance. This different treatment of aggravating circumstances as opposed to mitigating circumstances is one of the law's safeguards against unjust or unfair death sentences.

N.T. 2/3/93, 40–41. Despite the fact that in this charge the trial court carefully and meticulously instructed the jury that mitigating circumstances did not have to be found unanimously and that each juror could find them individually, Appellant complains that certain other instructions, which Appellant failed to identify in his brief, somehow caused the jury to "likely understand the trial court's instructions to require a unanimous finding of a mitigating circumstance before it could be given effect." Appellant's Brief, 87.

█ Viewing the trial court's instructions as a whole, Appellant would not have succeeded on his *Mills* claim had it been preserved for review; the trial court's instructions adequately defined the law for the jury with respect to aggravating and mitigating circumstances and did not convey to the jury that it could not consider Appellant's mitigating evidence. *See Commonwealth v. Cross*, 555 Pa. 603, 726 A.2d 333, 336–38 (1999) (holding that instructions similar to the instant ones did not violate *Mills*). Accordingly, relief is denied with respect to Appellant's claims of appellate counsel ineffectiveness stemming from the propriety of the trial court's penalty phase jury instructions.

## XIII. DID THE PROSECUTOR'S PENALTY PHASE ARGUMENT VIOLATE THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF–INCRIMINATION, THE EIGHTH AMENDMENT, AND THE FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS, AND WERE BOTH TRIAL AND APPELLATE COUNSEL INEFFECTIVE?

Appellant contends that appellate counsel was ineffective for not raising the ineffectiveness of trial and standby counsel— trial counsel for not objecting to comments the prosecutor made during the penalty hearing and standby counsel for not raising an issue accusing trial counsel of being ineffective for not objecting to the comments.[59] The comments were objectionable, Appellant contends, because they allegedly concerned the defense's plea for mercy and remarked on Appellant's failure to provide reasons why he shot the victim when he testified during the penalty hearing. The remarks were unfair and deprived Appellant of due process, in Appellant's view, because Appellant had been precluded from discussing the facts of the case and his innocence by the trial court, *see* N.T. 2/1/93, 6–9, and because the comments improperly advised the jury that it was inappropriate to show Appellant mercy. Appellant's Brief, 89–91.

The Commonwealth asks us to reject Appellant's claim that the comments were prejudicial on the ground that the propriety of the remarks was previously litigated on direct appeal. In the alternative the Commonwealth asserts that the claims

---

**59.** The prosecutor stated:

Frankly, I don't think this is the time for mercy. I think that time is long since past and the defendant has not really acted out a request for mercy, in that when he was arrested, he had a chance to tell Detective Dougherty what happened and if he wanted mercy, that was the time to ask for mercy. When he took the stand yesterday and had people testify on his behalf, if there was a real reason for his activities in dealing drugs and there was a real sense of honesty and true remorse of his killing of Vaughn Christopher because of drug involvement, he would have told you; he would have admitted it like a man and he would have, at that time, asked you for mercy. But, that has never happened in this case, so, I submit to you, the time for mercy is long since past.

N.T. 2/3/93, 6–7.

lack arguable merit because the challenged remarks were not improper. Commonwealth's Brief, 94–97.

We cannot agree with the Commonwealth's assertion that Appellant is not entitled to review of this claim because it was previously litigated. The precise issue Appellant raises here concerns the ineffectiveness of direct appeal counsel for failing to raise a claim that trial counsel was ineffective for not objecting to the comment on grounds that the prosecutor committed prosecutorial misconduct, a claim that was preserved in post-verdict motions. Whether or not appellate counsel was ineffective is a discrete claim requiring independent review. *See Ronald Collins*, 888 A.2d at 573. Accordingly, review of this layered ineffectiveness claim follows.

First, the ineffectiveness claim fails because the prosecutor's remarks did not abase Appellant for not proclaiming his innocence or discussing the facts of the case but rather for not demonstrating remorse for the killing. This was entirely proper because a prosecutor is free to comment on the testimony presented by a defendant. *See Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 38–39 (1998). Thus, trial counsel was not ineffective for failing to object to the comment for this reason. As trial counsel was not ineffective, Appellant cannot establish the arguable merit prong of the ineffectiveness test with respect to appellate counsel.

Appellant's complaint that the remarks improperly advised the jury that it could not show mercy also lacks merit because a prosecutor may argue that mercy is not a valid ground upon which to base a sentencing verdict. *See Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 804–05 (2004) (holding that prosecutor may argue that jury should balance mercy for defendant against mercy defendant showed victim); *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 415–16 (2003) (same); *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871, 875–76 (1998) (holding that the prosecutor was permitted to argue that the jury should not base its verdict on mercy); *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400, 415–16 (1997) (holding that it was not improper for prosecutor to

argue that jury should show defendant same mercy he showed victim). Accordingly, we hold that Appellant is not entitled to relief here because the prosecutor's comments were not objectionable and thus trial counsel cannot be held to have been ineffective for failing to object to the remarks at trial. Because trial counsel was not ineffective for failing to object, direct appeal counsel was not ineffective for failing to raise trial counsel's ineffectiveness on direct appeal.

## XIV. DID THE TRIAL COURT ERRONEOUSLY PERMIT HEARSAY EVIDENCE ABOUT MR. FLETCHER'S PRIOR CONVICTION AND WERE STANDBY AND APPELLATE COUNSEL INEFFECTIVE IN FAILING TO RAISE THE ISSUE?

Appellant complains that appellate counsel were ineffective for not asserting that trial counsel was ineffective for not objecting on hearsay grounds to the introduction of the contents of an arrest warrant affidavit issued for Appellant regarding a charge of robbery lodged against him prior to the murder herein. After Appellant testified during the penalty hearing, the Commonwealth introduced evidence that Appellant had entered a guilty plea to a robbery charge for purposes of undermining Appellant's credibility with this *crimen falsi* crime. N.T. 2/2/93, 146–148. None of the details of the robbery were presented to the jury. However, in cross-examining the witness through whom the existence of the conviction was introduced, trial counsel implied by his questioning that Appellant had entered a guilty plea to a charge he did not actually commit. N.T. 2/2/93, 148–152. In rebuttal, the Commonwealth was granted permission, *over objection,* to have its witness read into the record the contents of the affidavit. The trial court overruled the objection after finding that trial counsel had "opened the door" to the admission of the contents of the affidavit through his cross-examination of the witness. N.T. 2/2/93, 152–156. Appellant now submits that the affidavit contained two inadmissible double-hearsay statements made by the complainant in the robbery and trial counsel should have objected to its admission into evidence on

this ground. Instead, trial counsel proffered a general objection and then a motion for a mistrial.[60] Appellant's Brief, 91.

The Commonwealth asks us to reject this claim because Appellant failed to provide legal support for it. The Commonwealth also argues that this claim was raised and rejected in *Fletcher I* and thus is unreviewable because it was previously litigated. Commonwealth's Brief, 97–98.

■ In *Fletcher I*, Appellant argued on direct appeal that the trial court erred by permitting the Commonwealth's witness to read the affidavit into evidence because the affidavit contained inflammatory material and inadmissible hearsay. *See* Appellant's Brief and Record on Direct Appeal, 70. This Court held that Appellant's claim was meritless because the Commonwealth was properly granted the right to rebut the inference of innocence generated by trial counsel's questions of the Commonwealth's witness. *Fletcher I*, 750 A.2d at 278. In addition, this Court noted that the trial court gave the jury extensive instructions concerning the prior robbery conviction which included the admonition that the jury could only use that evidence to assess Appellant's credibility. *Id.* Given that direct appeal counsel did raise the issue Appellant now presents on direct appeal and in the absence of any separate challenge to appellate counsel's performance related thereto, it is clear that he was not ineffective and that Appellant's claim fails.

XV. THE DEATH SENTENCE SHOULD BE VACATED BECAUSE THIS COURT FAILED TO PROVIDE MEANINGFUL PROPORTIONALITY REVIEW.

Appellant claims that this Court in *Fletcher I* did not provide a meaningful or correct proportionality review to which he was entitled pursuant to now-repealed 42 Pa.C.S. § 9711(h)(3)(iii).[61] Appellant's complaint rests upon an asser-

60. The affidavit indicated that the complainant stated that Appellant said, "Where's my money?" and told the complainant that if Appellant was arrested, Appellant would kill him. N.T. 2/2/93, 154–155.

61. Proportionality review refers to a review of a death penalty case in comparison with other death penalty cases. *See Commonwealth v.*

tion that a proper proportionality review could not have occurred on account of errors and omissions in a database administered by the Administrative Office of the Pennsylvania Courts (AOPC).[62] Appellant also claims that he was deprived of due process of law because he never received the materials stored by the AOPC and he was not provided an opportunity to be heard with respect to proportionality review. Appellant's Brief, 93. Finally, Appellant complains that direct appeal counsel was ineffective for not obtaining from the AOPC the materials utilized by this Court in conducting its proportionality review. Appellant's Brief, 93.

The Commonwealth asks that we hold the claim meritless because it has been previously litigated. The Commonwealth also submits that Appellant is not entitled to relief because he waived his claims by failing to raise them in his PCRA

> *Gribble*, 550 Pa. 62, 703 A.2d 426, 438–39 (1997). It was mandated by former 42 Pa.C.S. § 9711(h)(3)(iii) which provided: "[t]he Supreme Court shall affirm the sentence of death unless it determines that the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant." On this issue, in *Fletcher I*, this Court stated:
>
>> Moreover, in accordance with [*Commonwealth v.*] *Zettlemoyer*, [500 Pa. 16,] 26, 454 A.2d [937,] 942 [(Pa.1982)], we must conduct a proportionality review as to appellant's sentence of death. Here, since the jury found that the two aggravating circumstance outweighed the two mitigating circumstances, the jury was statutorily required to impose a sentence of death. 42 Pa.C.S. § 9711(c)(1)(iv). Further, we have conducted an independent review of similar cases and reviewed the data compiled by the Administrative Office of Pennsylvania Courts in which the sentence of death was made mandatory by the finding of aggravating factors that outweighed mitigating circumstances and conclude that the sentence of death imposed upon appellant is not disproportionate to the sentences imposed in similar cases. Accordingly, we affirm the verdict and the sentence of death imposed upon appellant by the Court of Common Pleas of Philadelphia County.
>
> *Fletcher I*, 750 A.2d at 281.

**62.** Appellant complains that the AOPC failed to collect data regarding the specific nature or strength of aggravating or mitigating circumstances and that its database does not permit a reviewer to compare "specific types of character, background, and personal history mitigating evidence or the specific circumstances of the offense presented for consideration by the capital sentencer." Appellant's Brief, 92.

petition. Finally, the Commonwealth notes that this Court has previously rejected claims identical to the one Appellant raises here. Commonwealth's Brief, 98.

 We agree that Appellant waived the issues he now presents because he did not raise them in his PCRA petition.[63] In his PCRA petition, Appellant claimed that the proportionality review this Court conducted on direct appeal was flawed because the Court allegedly did not consider cases in which life sentences were imposed. PCRA Petition, 239–240. Appellant did not raise a claim challenging the accuracy of the data compiled by the AOPC, a due process claim, or an ineffectiveness claim. Thus we hold that Appellant waived the claims he now presents on appeal. Pa.R.A.P. 302(a) (providing that issues not presented in the lower court are waived and cannot be presented for the first time on appeal).

### Conclusion

The order of the PCRA court denying relief is affirmed. Jurisdiction is relinquished.[64]

---

63. It could further be argued that Appellant waived review of his flawed proportionality review and due process claims by failing to file a petition seeking reargument following the denial of his direct appeal. *See Duffey*, 889 A.2d at 75–6 (Castille, J. concurring). Although Appellant has herein raised a claim that direct appeal counsel was ineffective for not raising these issues, Appellant failed to present case law to support his ineffectiveness claim and merely presented, without discussion, statements that counsel's representation was deficient and that he suffered prejudice. Appellant's Brief, 93. By failing to provide a full and complete analysis of his ineffectiveness claim, Appellant waived it. *See Steele*, 961 A.2d at 799 (holding that to preserve an ineffectiveness claim, a litigant must provide meaningful discussion with respect to each prong of ineffectiveness test); *Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d 978, 988 (2002) ("Claims of ineffective assistance of counsel are not self-proving"). Finally, even had Appellant preserved his substantive claims by including them in his PCRA petition, he would not have been entitled to any relief because his proportionality review claims were previously litigated on direct appeal. *See Rainey*, 928 A.2d at 244 (holding that claim alleging that prior proportionality review was not meaningful because it was based on flawed data was not cognizable because it was previously litigated).

64. The Prothonotary of the Supreme Court is directed to transmit a complete record of this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, and McCAFFERY join the opinion.

Justice SAYLOR concurs in the result.