J-A20014-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| HARRY D. YARBROUGH, JR. | : | |
| Appellant | : | No. 218 WDA 2019 |

Appeal from the PCRA Order Entered January 11, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002185-2015

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| HARRY D. YARBROUGH, JR. | : | |
| Appellant | : | No. 219 WDA 2019 |

Appeal from the PCRA Order Entered January 11, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002187-2015

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: FILED DECEMBER 29, 2020

Harry D. Yarbrough, Jr. appeals pro se from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

On May 22, 2014, Amelia May Marsh was working as a loss prevention officer in the Sears store at Mill Creek Mall in Erie County, when she noticed a man concealing a pair of socks in his clothing. See N.T. Jury Trial, 1/14/16, at 101-02. Ms. Marsh left the security office, where she had been watching

the store's surveillance cameras, in order to observe him. Id. at 103. She found the man in the hardware department and, from an obscured position, watched as the man broke a screwdriver off from a multi-pack and concealed it in his coat. Id. He then did the same with some bolt cutters before proceeding to the store exit. Once the man exited the store with the concealed items on his person, Ms. Marsh and her supervisor stopped the man and asked him to come back with them to their office. When prompted, the man identified himself as Tony Young and returned the stolen items. Since the man was unable to verify his identity, Ms. Marsh called the Millcreek Police Department. Id. at 112.

Patrolman Jeffrey Keller arrived and met with Ms. Marsh, who had the individual and another male loss prevention officer in her office. Id. at 160. When the man saw Patrolman Keller he "got very excitable," apologized for what he did, and told them that he would pay for the merchandise. Id. at 161. While Ms. Marsh recounted what had transpired, the suspect began to move around nervously and started reaching into his pockets. Id. at 162. In order to ensure that he did not have any weapons, Patrolman Keller initiated a pat down. However, the suspect refused to comply with his commands and began struggling with him. Patrolman Keller requested backup and placed the man in handcuffs while he waited for an additional officer to arrive. Id. at 162-63.

Eventually, Patrolman Keller found a box cutter on the suspect's person. Despite a record search indicating that no such person existed, the suspect

continued to assert that his name was Tony Young. Accordingly, he was placed under arrest and taken to the police station so that they could fingerprint him. After officers ran the fingerprints, they determined that the individual was Appellant. When confronted with this information, Appellant laughed, smiled, and told the officers that they had done a "good job." Id. at 167. Appellant was charged with retail theft, furnishing false identification to law enforcement, and a summary count of disorderly conduct.

On June 28, 2014, Ms. Marsh, still working as a loss prevention officer at Sears, received a picture of an individual who had been breaking into unmanned cash registers in JC Penney and Bon Ton stores in the mall. Id. at 116. The suspect's face was unclear, but she could identify his attire. After reviewing the image, Ms. Marsh exited Sears and began walking through the mall concourse to see if she could find anyone matching the clothing description. Id. at 116. She walked approximately fifty feet before she saw Appellant, whom she recognized from the previous incident. Appellant was wearing the same shirt she saw in the aforementioned photograph. Id. at 117. Ms. Marsh contacted her supervisor, who reached out to the manager at Bon Ton, Chris Castillo. The Millcreek Police were summoned and, while the employees awaited their arrival, Ms. Marsh continued to follow Appellant. Id.

Millcreek Patrolman Herbert Lucas responded and met with Mr. Castillo, who informed Patrolman Lucas that they had been investigating a series of cash register break-ins and that they believed they had found the person

responsible in the mall.  Id. at 171-72.  Mr. Castillo guided Patrolman Lucas to Ms. Marsh, who pointed out Appellant.  At the moment he was identified, Appellant was inside of yet another store, where he had a piece of merchandise in his hand and appeared to be fiddling with a security device. Id. at 173.

Patrolman Lucas approached Appellant, grabbed his left arm, and said "you need to come with me."  Id. at 174.  Appellant turned to face him and a short scuffle ensued that spilled out into the main mall concourse.  During the scuffle, Patrolman Lucas pulled Appellant's shirt and backpack off of him.  Id. Something in Appellant's hand cut Patrolman Lucas between two of his fingers, forcing him to relinquish his grip and fall down.  Appellant fled, with Ms. Marsh in close pursuit, out into the parking lot.  Id. at 182.  Once outside, Appellant turned his head towards Ms. Marsh and told her that "he would cut her."  Id. at 124, 183.  Appellant's remark scared Ms. Marsh and she stopped chasing him.  Id. at 125.  Appellant continued running and fled down an embankment into a creek.  Id. at 126.  A search of Appellant's backpack uncovered a box cutter with removable utility blades.  Id. at 180.  As a result of this incident, Appellant was arrested and charged with possession of instruments of crime ("PIC"), terroristic threats, and resisting arrest.

The above-captioned cases were joined, and after a preliminary hearing, the aforementioned charges were held for trial.  On October 16, 2015, Appellant's appointed counsel, Stephen Lagner, Esquire, filed a motion to withdraw based upon Appellant's desire to represent himself.  The trial court

subsequently held a hearing at which he informed Appellant that he was free to hire private counsel, represent himself, or continue to be represented by Attorney Lagner. Appellant chose to continue with Attorney Lagner and the trial court denied the motion to withdraw.

Appellant filed a counseled omnibus pretrial motion challenging the sufficiency of the evidence to establish a prima facie case of disorderly conduct and requesting that the cases be tried separately. Prior to the hearing, counsel filed a second motion to withdraw, contending Appellant sought once again to represent himself. The trial court orally denied the motion, concluding that it was a delay tactic by Appellant, and proceeded with the hearing.[1] In relevant part, Attorney Lagner objected to the admission of any videos of the incidents without proper authentication, but his objection was overruled. Id. at 8-11. On December 23, 2015, the trial court issued an order denying Appellant's omnibus pretrial motion and counsel's second request to withdraw.

On January 13, 2016, Appellant appeared for jury selection and again stated that he wished to represent himself. The trial court conducted an oral and written colloquy, before granting Appellant the right to proceed pro se with Attorney Lagner as stand-by counsel. See N.T. Jury Trial, 1/13/16, at 7.

_____

[1] These two cases were initially joined with a third case, CP-25-CR-0002189-2015. At the hearing, the Commonwealth moved to dismiss that case, concluding that the surveillance footage did not support the charges. See N.T. Omnibus Pretrial Motion Hearing, 12/22/15, at 15. The trial court granted the Commonwealth's request and the charges were dismissed.

At the conclusion of jury selection for the day, Appellant informed the trial court that he had not been able to watch any of the surveillance footage of the incidents. Id. at 60. Attorney Lagner provided context, explaining that while the defense had the DVDs, Appellant had not been able to view them because the jail did not have the necessary computer program. Id. at 60-61. Appellant also requested the dispatch records from Patrolman Lucas. Id. at 64. The Commonwealth responded that it did not believe any dispatch records existed, or would be relevant if they did, but that it would investigate further. Id. at 66. The Commonwealth agreed to play the DVDs for Appellant in the district attorney's office before jury selection resumed the next morning. Id. at 62.

On January 14, 2016, after Appellant reviewed the DVDs and dispatch records, the parties concluded the jury selection process. Next, Appellant proceeded to orally raise a motion in limine, seeking to exclude from trial two screwdrivers and a box cutter that were found in his backpack. See N.T. Jury Trial, 1/14/16, at 66. After receiving argument from both sides, the trial court granted Appellant's motion regarding the screwdrivers, but allowed the admission of the box cutter. Id. at 71.

At trial, Appellant did not testify, but he did attempt to admit the dispatch tapes he had requested to review earlier. Appellant argued that the dispatch tapes were needed to show that Patrolman Lucas did not initially tell anyone that he was cut by Appellant. See N.T. Jury Trial 1/15/16, at 7-8. Since the Commonwealth agreed that Patrolman Lucas did not mention his

injuries to dispatch, the trial court decided to issue an instruction regarding the dispatch tapes instead of playing them for the jury. Id. at 8-13, 21. Ultimately, the jury convicted Appellant of false identification, retail theft, terroristic threats, and resisting arrest, but acquitted him of PIC. Afterwards, the trial court convicted Appellant of summary disorderly conduct. Sentencing was deferred so that a pre-sentence investigation report could be prepared. In the meantime, Appellant filed pro se motions in which he, inter alia, challenged the weight of the evidence, asked the court to compel Attorney Lagner to provide him with the dispatch CD, and requested an extension of time for the filing of additional post-trial motions.

On March 9, 2016, Appellant proceeded to sentencing where he received an aggregate term of four to eight years of incarceration. The trial court also considered Appellant's post-trial motions, granting the motion to compel counsel to turn over the dispatch CD, accepting Appellant's motion challenging the weight of the evidence as a post-sentence motion, and granting additional time for Appellant to supplement the motion if he wished.

Thereafter, Appellant filed pro se post-sentence motions requesting, inter alia, all of the transcripts from the case, which was granted. Appellant also sought the appointment of standby counsel to help with his direct appeal and petitioned for a new trial. Finally, he challenged the denial of his pretrial motions, raised evidentiary issues from trial, alleged that discovery had not been turned over to him, claimed that he had discovered new evidence about a juror, and pled multiple instances of pre-trial counsel ineffectiveness.

On March 30, 2016, the trial court held a hearing on Appellant's motion for the appointment of standby counsel. At the hearing, Appellant requested more time at the prison library and petitioned the trial court to direct stand-by counsel to help him structure his appellate argument and make copies of his filings. N.T. Hearing, 3/30/16, at 6-8. Following a discussion about the different roles that appointed counsel and stand-by counsel play, Appellant confirmed that he wanted to continue representing himself with stand-by counsel. Id. a 16-18. After the hearing, the trial court issued an order appointing stand-by counsel and reiterating that stand-by counsel would respond to Appellant's request for advice and consultation, but would not draft correspondence or pleadings, conduct legal research, or perform clerical duties for Appellant. See Order, 3/31/16.

On May 2, 2016, the trial court issued an order collectively denying the remaining balance of Appellant's post-trial motions. The court also notified Appellant that he had thirty days to file a direct appeal.

Appellant filed a timely notice of appeal and complied with the trial court's order to file a concise statement, raising twenty-three separate issues. On July 27, 2016, the trial court issued a Pa.R.A.P. 1925(a) opinion addressing all of Appellant's issues, which it grouped into three categories. After several continuance requests, and a brief remand for a Grazier[2] hearing, the appeal was dismissed due to Appellant's failure to file a brief. See N.T. Grazier

_____

[2] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

Hearing, 11/4/16; see also Trial Court Order, 11/18/16, at 1 (stating that Appellant shall continue to represent himself on appeal as he has knowingly, voluntarily, and intelligently waived his right to counsel); see also Superior Court Order, 2/8/18, at 1 (dismissing appeal due to Appellant's failure to file an appellate brief).

On August 13, 2018, Appellant filed a timely pro se PCRA petition, in which he raised the same issues that he had sought to litigate on direct appeal. However, Appellant did not request the reinstatement of his direct appellate rights. Instead, he sought a release from custody and discharge. The court appointed William Hathaway, Esquire, who filed a supplemental PCRA petition. Therein, counsel alleged that Appellant was denied the right to self-representation and forced into accepting hybrid counsel, as well as a litany of other claims that he conceded should have been asserted on direct appeal. However, counsel explained that waiver should be overlooked because there was confusion over whether Appellant was represented by counsel on direct appeal. On December 24, 2018, the PCRA court issued notice of intent to dismiss the PCRA petition without a hearing on the basis that Appellant's claims could have been presented on direct appeal, but were not. On January 11, 2019, the PCRA court dismissed the petition.

Attorney Hathaway filed a timely notice of appeal. The next day, Appellant filed a motion to proceed pro se wherein he alleged that PCRA counsel was ineffective when he did not include any citations in his supplemental PCRA petition and did not respond to the PCRA court's notice of

intent to dismiss. Appellant asked for everything to be "redone" with new PCRA counsel, or for Appellant to be given the option to proceed pro se. See Motion for Change of Appointed Counsel, 2/15/19. While Appellant's motion was pending, Attorney Hathaway filed a concise statement pursuant to Pa.R.A.P. 1925(b), in which he reiterated the claims that he had raised in the supplemental PCRA petition.

A Grazier hearing was scheduled, and rescheduled several times, after the original PCRA judge retired. Once the case was reassigned, a Grazier hearing was held. At the hearing, Appellant completed a right-to-counsel colloquy and elected to proceed pro se with his PCRA appeal. A month later, the PCRA court filed its Rule 1925(a) opinion upholding dismissal, relying on the rationale previously articulated in the notice of intent to dismiss. Accordingly, both Appellant and the PCRA court have complied with their respective obligations under Pa.R.A.P. 1925.

Appellant presents the following issues, which we have reordered for ease of disposition:

> A. Did standby counsel undermine [Appellant's] state and federal constitutional rights to self[-]representation?
>
> B. Was [Appellant] convicted of resisting arrest CC 5104 despite being actually innocent? And/or was the evidence insufficient as a matter of law?
>
> C. Did the trial court [err] by sending a box cutter to the jury during deliberations after granting [Appellant's] motion of acquittal as to any charges emanating from possession of said article?

D.     Did the Commonwealth witnesses commit perjury?

E.     [Were] the videos altered, fabricated and deleted exculpatory evidence?

F.     Was the evidence insufficient as a matter of law and factual support the conviction of retail theft CC 3929(a)(1) and/or was [Appellant] actually innocent?

G.     Did the lower court [err] in not severing the charges of retail theft, disorderly conduct and false identification to law enforcement which came about as the result of an incident that transpired thirty-six days earlier than the incident for which he was arrested for in "theory only" and which gave rise [to] this appeal?

H.     Was the evidence legally insufficient to convict [Appellant] of terroristic threats and/or was [Appellant] actually innocent?

I.     Did the Commonwealth commit a Brady error?

J.     Was PCRA counsel ineffective?

Appellant's brief at VIII-VIIII.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." Commonwealth v. Rykard, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." Id. "[W]here the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary." Id.

A petitioner is not entitled to PCRA relief on claims that have been waived. Commonwealth v. Fletcher, 986 A.2d 759, 772 (Pa. 2009). It is well-established that a claim is waived if "the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b). An appellant cannot overcome waiver by alleging ineffective assistance of counsel during a proceeding where he represented himself, because the law prohibits a defendant who chooses to represent himself from alleging his own ineffectiveness. See Commonwealth v. Williams, 196 A.3d 1021, 2029-30 (Pa. 2018); see also Commonwealth v. Bryant, 855 A.2d 726, 736-37 (Pa. 2004). Importantly, the fact that standby counsel was appointed to assist, at trial or on appeal, does not alter this conclusion. See Fletcher, supra at 774.

The first nine of Appellant's ten claims concern issues that Appellant could have raised on direct appeal. Indeed, he raised them in his pro se post-verdict motions and concise statement filed in connection with his direct appeal. The fact that the issues were not reviewed by this Court resulted from Appellant's failure to file an appellate brief. Nonetheless, the claims are waived pursuant to 42 Pa.C.S. § 9544(b). Furthermore, as detailed above, Appellant elected to proceed pro se with stand-by counsel at trial and during the appellate phase of the proceedings. Therefore, he cannot overcome the

waiver of his first nine claims by alleging his own, or stand-by counsel's, ineffectiveness.[3]

In Appellant's remaining allegation, he contends that PCRA counsel was ineffective when he failed to seek the reinstatement of Appellant's direct appeal rights nunc pro tunc. See Appellant's brief at 1, 8. Appellant explains that because the librarian at SCI Greene refused him access to the library, he could not make copies of his brief. Accordingly, he was unable to file an appellate brief. Id.

A review of the certified record reveals that Appellant has not preserved this issue for review in the instant appeal. Claims of PCRA counsel ineffectiveness cannot be raised for the first time on appeal. See Commonwealth v. Vo, 235 A.3d 365, 370 (Pa.Super. 2020); see also Commonwealth v. Smith, 121 A.3d 1049, 1054 (Pa.Super. 2015) citing Commonwealth v. Ford, 44 A.3d 1190, 1201 (Pa.Super. 2012) ("[A]bsent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after

_____

[3] In making this finding, we note that our Supreme Court has allowed ineffective assistance claims in those situations where stand-by counsel has taken over trying the case during the jury trial. See Commonwealth v. Bryant, 855 A.2d 726, 737 (Pa. 2004) (deeming claims of ineffective assistance of counsel waived as to the part of the trial when the defendant was representing himself, but reviewing the merits of claims related to counsel's performance after the defendant requested that standby counsel take over). However, this situation is not relevant here, since Appellant represented himself for the entire trial and never requested that standby counsel take over.

a notice of appeal has been taken from the underlying PCRA matter."). Instead, such claims are properly raised by filing a pro se response to the Rule 907 notice, by retaining private counsel while the PCRA petition is still pending, or by raising them in a subsequent PCRA petition. See Vo, supra at 369 (citing Commonwealth v. Jette, 23 A.3d 1032, 1044 n. 14 (Pa. 2011)).

Appellant had an affirmative duty to preserve his claims in the lower court. If he sought to assert claims of ineffective assistance of PCRA counsel, he should have requested to proceed pro se or hired private counsel before the conclusion of the PCRA proceedings in the court below. Instead, Appellant did nothing between the issuance of the Rule 907 notice and dismissal of his petition. Specifically, Appellant alleged the ineffectiveness of PCRA counsel and requested to proceed pro se after the PCRA court had dismissed his petition and appointed counsel had already filed a notice of appeal. Since Appellant raised the PCRA counsel ineffectiveness claims for the first time on appeal, we may not consider them. See Ford, supra at 1201. Consequently, Appellant's only potential avenue for relief on these issues is through pursuit of a new PCRA petition once he has finished litigating this one. See Vo, supra at 369.

As Appellant has waived his claims, we affirm the PCRA court's order dismissing his petition.

Order affirmed.[4]

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2020

_____

[4] During the pendency of this appeal, Appellant filed a motion seeking to supplement the certified record with a DVD from one of the incidents and a CD containing Patrolman Lucas's dispatch calls. We granted the motion. On October 29, 2020, Appellant filed a motion to compel the lower court to forward the relevant CD and DVD after he was unable to send his copies, due to a transfer from SCI Greene to SCI Somerset. Since we resolve Appellant's appeal on procedural grounds, we dismiss Appellant's motion to compel as moot.